565 A.2d 1220

James Richard McGINLEY, Jr., Appellant at No. 826PHL89,

v.

Mary Lou McGINLEY, Appellant at No. 686PHL89.

Superior Court of Pennsylvania.

Argued Sept. 12, 1989.

Filed Nov. 8, 1989.

Jerome B. Nulty, Souderton, for appellant (at 686) and appellee (at 826).

Sandor Engel, Allentown, for appellant (at 826) and appellee (at 686).

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

JOHNSON, Judge:

Mary Lou McGinley (Wife) and James Richard McGinley (Husband) appeal from the order entered February 6, 1989, decreeing the parties to be divorced from the bonds of matrimony and establishing the terms of an equitable distribution. We affirm.

Husband and Wife were both born in 1951. They were married on September 23, 1972 and subsequently separated on April 24, 1982. Husband then filed a complaint in divorce in August, 1982. Hearings were held in this matter in November of 1986. On May 12, 1988 the Special Master filed his report and recommended the following: a) a plan of equitable distribution providing that Wife receive 60% and Husband 40% of the marital estate; b) an award of alimony to Wife of $400 per week for four years; c) an award of counsel fees and costs to Wife of $7,500; and d) an assessment against Husband of fees and costs related to the work of the Master. Exceptions to the Master's Report were filed by both parties and were argued before the lower court.

On February 6, 1989 the lower court entered an order which, inter alia, modified the Master's recommended equitable distribution plan by correcting a mathematical error, affirmed the Master's award of alimony, master's fees and costs, and overruled the Master's award of counsel fees and costs. Hence, the instant appeal and cross-appeal.

On appeal, Wife asserts the following issues.

I. DID THE MASTER ERR IN DETERMINING THE TRUE EXTENT OF HUSBAND'S PRE-MARITAL STOCK HOLDINGS AND FAILING TO AWARD WIFE A PORTION OF THE POST-MARRIAGE ACQUISITIONS?

II. SHOULD THE INCREASE IN VALUE OF A CERTAIN FUND, HELD IN TRUST FOR HUSBAND, BE INCLUDED AS MARITAL PROPERTY?

III. SHOULD A SINGLE ASSET, THE MARITAL HOME, BE SINGLED OUT FOR AN INCREASED APPRAISAL TWO YEARS AFTER THE MASTER'S HEARING HAS BEEN CLOSED AND THE INCREASE BE TAKEN FROM WIFE, DOLLAR FOR DOLLAR?

IV. MAY WIFE'S REQUEST FOR OVER $40,000.00 IN COUNSEL FEES AND COSTS BE TOTALLY DISMISSED BECAUSE THE HEARINGS ARE NOW OVER AND SO WIFE SHOULD PAY THIS OUT OF HER CASH DISTRIBUTION?

V. WAS AN ALIMONY AWARD OF ONLY $400 A MONTH, FOR FOUR YEARS, SUFFICIENT IN VIEW OF WIFE'S ROUTINE EXPENSES, EXPECTED TUITION AND MORTGAGE COSTS, AND HUSBAND'S EXTREME EARNING CAPACITY?

VI. IS THE AWARD OF ONLY 60% IN EQUITABLE DISTRIBUTION SUFFICIENT CONSIDERING WIFE'S POOR EARNING CAPACITY AND HUSBAND'S DEMONSTRATED POTENTIAL FOR THE ACCUMULATION OF WEALTH?

VII. DID HUSBAND REALLY USE THE $18,000 FROM THE JOINT CAPITAL PRESERVATION FUND TO PAY A JOINT BILL AND SO EXCLUDE THE SUM FROM EQUITABLE DISTRIBUTION?

VIII. DID THE MASTER MAKE AN ARITHMETICAL ERROR OF $8,437 IN OVER–VALUING THE ASSOCIATED SUPPLIERS LIMITED ASSET IN HUSBAND'S POSSESSION?

On cross-appeal, Husband raises the following contentions.

I. WHETHER IT IS AN ABUSE OF DISCRETION TO MAKE AN EQUITABLE DISTRIBUTION AWARD REQUIRING THE PAYMENT OF CASH WHEN THE PAYING SPOUSE HAS NO SOURCE OUT OF WHICH TO PAY OR FROM WHICH TO BORROW?

II. WHETHER IT IS AN ABUSE OF DISCRETION NOT TO CONSIDER THE TAX CONSEQUENCES OF LIQUIDATING AN ASSET IN AN EQUITABLE DISTRIBUTION PROCEEDING?

III. WHETHER IT IS AN ABUSE OF DISCRETION TO AWARD A 60/40 DIVISION OF THE NEW WORTH OF A MARITAL ESTATE WHEN THE ESTATE IS ILLIQUID?

IV. WHETHER A LIFE INSURANCE POLICY PURCHASED PRIOR TO MARRIAGE IS NON–MARITAL PROPERTY, BUT IF MARITAL PROPERTY, SHOULD IT BE VALUED BY ITS CASH SURRENDER VALUE RATHER THAN THE AMOUNT OF PAID UP INSURANCE?

V. WHETHER AN AWARD OF REHABILITATIVE ALIMONY IS APPROPRIATE TO FINANCE A DEPENDENT SPOUSE'S COLLEGE EDUCATION WHEN THE SPOUSE HAS BEEN COLLECTING SPOUSAL SUPPORT FOR MORE THAN SIX YEARS, HAS NEVER ENROLLED IN ANY COLLEGE COURSES, AND IS NOT ELIGIBLE TO ENROLL IN ANY OF THE INSTITUTIONS UPON WHICH THE AWARD OF ALIMONY IS PREDICATED?

VI. WHETHER BIFURCATION SHOULD BE GRANTED WHEN THE PARTIES HAVE BEEN SEPARATED MORE THAN SIX YEARS, THE MARRIAGE IS IRRETRIEVABLY BROKEN AND THERE ARE NO DISADVANTAGES TO THE DEPENDENT SPOUSE?

First, we recognize that when reviewing an award of alimony, counsel fees, and property distribution under the

new Divorce Code, we must utilize the abuse of discretion standard. 23 P.S. § 101; *Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983). Therefore we will not usurp the trial court's duty as finder of fact by reversing its determination unless an abuse of discretion has been shown. *Id.*

We have independently reviewed both the record and the trial court opinion, and we find no abuse of discretion in the trial court's determination of Wife's challenges to Husband's ownership of stock, the value of the marital home, the denial of an award of counsel fees and costs to Wife, the award to Husband of the entire joint Capital Preservation Fund and the correction of an arithmetical error in the valuation of the marital asset Associated Supplier's Limited. Neither do we find that the trial court abused its discretion in its resolution of Husband's challenge to the award of alimony to Wife. Both parties have challenged the equitable distribution division fashioned by the court. We find that the trial court considered the proper factors in reaching its conclusion that Wife receive 60% and Husband receive 40% of the marital estate.

A thorough review of the record reveals that the Honorable William F. Moran in his Opinion filed February 6, 1989 has competently and completely addressed Wife's contentions I, III, IV, and VI–VIII. In addition, Judge Moran had adequately addressed Husband's Issues I–III, and V. We approve the analysis of the lower court with respect to those issues and conclude that they are without merit. The following analysis addresses Wife's Issues II and V and Husband's Issues IV and VI.

At Issue II Wife argues that the trial court erred in ruling that the increase in the value of Husband's trust fund was not marital property. Wife asserts that Husband had a vested interest and not an expectancy in the stocks that comprised the trust corpus of the testamentary trust created by Husband's grandfather. She reasons that therefore the increase in the value of the stocks is marital property under the Divorce Code, which includes the following provision:

(e) For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage, including the increase in value prior to the date of final separation of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:

> (3) Property acquired by gift, except between spouses; bequest; devise; or descent.

. . . . .

23 P.S. § 401(e)(3). In other words, while the corpus of property listed in 401(e)(3) is not marital property, the increase in value during the marriage is. *Anthony v. Anthony*, 355 Pa.Super. 589, 514 A.2d 91 (1986).

Husband argues that Wife is not entitled to her proportionate share of the increase in the value of the trust property because his own interest in the trust did not vest until after he and Wife separated. He avers that the reason his interest in the trust did not vest was because his father, the preceding life tenant of the trust, was still alive at the time that Husband and Wife separated. The trial court found that Husband's interest did not vest but wrote that if it had vested the trust's increase in value would have been marital property.

It is undisputed that, under 23 P.S. § 401(e)(3), the corpus of the trust is excluded from marital property. The question is whether the legislature intended the trust's increase in value to be included as marital property, as the legislature expressly included the increase in value of property acquired by gift, bequest, devise or descent § 401(e)(3), *supra*. This point has not yet been considered in Pennsylvania. It is also undisputed that, if an interest is so contingent that it is a mere expectancy, then no aspect of it can be included as marital property. For instance, in *Hutnik v. Hutnik*, 369 Pa.Super. 263, 535 A.2d 151 (1987), we held that a former husband's expectancy in receiving money held jointly with his mother in certificates of deposit could not be considered marital property. Therefore, in order to decide whether or not the legislature intended to include Husband's interest in 401(e)(3), we must first ascertain the

nature of his interest or, more precisely, determine whether or not his interest is vested.

 John R. McGinley, Sr., Husband's grandfather, died in 1958. Our review of John R. McGinley's testamentary trust reveals that Husband had a vested interest in the trust on April 24, 1984, the date of the parties' separation. The language that established the testamentary trust is as follows:

EIGHTH: I give, devise and bequeath unto my wife, CATHERINE E. McGINLEY [Husband's grandmother], and my son JAMES R. McGINLEY [Husband's father], and my son, THOMAS F. McGINLEY, the following: 500 shares of Sacony–Vacuum Oil Company, 600 shares of General Motors Corporation and 2,000 shares of United States Steel Corporation, IN TRUST NEVERTHELESS, upon the following conditions that my said Trustees, survivor or survivors of them, or their successors in office, pay all the income from said Stocks quarterly to my wife during her lifetime and at the time of my wife's death, all the income from said stocks as mentioned in this Paragraph Eighth shall be paid quarterly to my sons, JAMES R. McGINLEY [Husband's father] and THOMAS F. McGINLEY, share and share alike, and upon the death of my son, JAMES R. McGINLEY [Husband's father], his share of said Stocks, I give, devise and bequeath in Trust to his children [which include Husband], until each child shall arrive at the age of thirty (30) years, then each child's share shall go to said child absolutely. And upon the death of my son, THOMAS F. McGINLEY, his share of said Stocks, I give, devise and bequeath In Trust to his children, until each child shall arrive at the age of thirty (30) years, then each child's share shall go to said child absolutely.

The Last Will and Testament of John R. McGinley, May 25, 1956, Paragraph Eight, Wife's Exhibit.

It has been the common law for centuries, and it has always been the law of this Commonwealth, that a future

interest may be vested, even if a condition precedent must occur before the actual passing of the property:

> It is a well-settled rule, repeated in numerous cases, that the tests in determining if an interest is vested or contingent, is (sic) not the certainty or uncertainty of obtaining actual possession, nor the defeasibility or indefeasibility of the right of possession, inasmuch as estates may be vested in interest though without present right of possession. So long as a present right exists to a future possession the estate is vested, even though actual possession may be defeated by a future event.

*Overbrook Heights Building & Loan Association v. Wilson*, 333 Pa. 449, 458, 5 A.2d 529, 532 (1939). This is true even if the future event is the remainderman's own death. *McCauley's Estate*, 257 Pa. 377, 101 A. 827 (1917).

The plan of disposition used in the present case is a standard way in which a testator may dispose of his property. The law, which favors vesting, *Patterson's Estate*, 247 Pa. 529, 93 A. 608 (1915), has created special labels for the interest held by Husband. First, because Husband's father must die before Husband comes into possession, and because Husband could predecease his father, Husband's interest is said to be vested subject to divestment. *See In re Taylor's Estate*, 384 Pa. 550, 121 A.2d 119 (1956). Second, the will makes a class gift to the children of James R. McGinley, Husband's father. As long as James R. McGinley is alive, he can theoretically have more children; therefore, Husband's proportional share of the property is not certain. Because the class is not closed until his father dies, Husband's interest is said to be vested subject to open. *See In re Newlin's Estate*, 367 Pa. 527, 80 A.2d 819 (1951). Thus, by using these labels the law makes clear that Husband's interest is vested even though the time he will receive actual possession is uncertain, and the size of the share he will receive is uncertain.

These two classifications of interest occur together naturally. Our supreme court was presented with the precise question of whether the future interest of a child whose

parent is still alive and in possession of the property has a vested interest in *In re Newlin's Estate, supra.* The court set forth the following rules:

> Where an estate is given to a life tenant, with remainder to the children of the life tenant, the estate vests at once upon the birth of each child, subject to open and let in after-born children * * * *without regard to the question of whether or not a child survives the life tenant. In re Edwards' Estate,* 255 Pa. 358, 361, 99 A. 1010, 1011 (citations omitted) (emphasis supplied).
>
> The interest of the defendant, the issue in being of the class of which he is a member, may be decreased or enlarged by future issue or by the death of some of the living issue in the same class, but this does not make his estate a contingent one. (citations omitted).
>
> Where a bequest is to a class, the vesting is not postponed because of uncertainty as to who, if any, may be the constituents of the class at the time fixed for the enjoyment of it. If there is a *present right* to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate. (citations omitted) (emphasis in original).

*Newlin's Estate,* 367 Pa. at 532–533, 80 A.2d at 823. The will in *Newlin's Estate* provided for the grandchildren to receive the principal of the trust "if and when" each arrived at age 30. After construing the will to determine the testator's plan of disposition the court held that, under the scheme of the will, the grandchildren's interests vested. An earlier court, considering whether a gift to "children" was vested or contingent, wrote:

> While there were no children and it could not be known that there would ever be any the existing condition was contingent, and it would require the positive fact of children born to remove the contingency. But the moment that children are born there is no longer any contingency, the condition of the devise is met and the estate in remainder becomes necessarily vested. It certainly cannot become again contingent while there are children

living, simply because there is a possibility that more children may be born in the future.

*Keller v. Lees,* 176 Pa. 402, 407, 35 A. 197, 198 (1896).

In discussing whether a will created a vested or contingent interest, the supreme court in *In re Houston's Estate,* 414 Pa. 579, 201 A.2d 592 (1964), relied upon *Newlin's Estate,* and further emphasized that:

The intention of a testator to create a contingent interest must appear clearly and plainly, otherwise the interest will be construed to be vested, or vested subject to be divested.

*Houston's Estate,* 414 Pa. at 594–595, 201 A.2d at 599. *See also In Re Estate of Benson,* 447 Pa. 62, 285 A.2d 101 (1971). Construing a well-drafted and exhaustive will that provided for almost every conceivable situation, the court in *Houston's Estate* concluded that, because of the care taken, the testator intended for the gifts to his heirs to be vested rather than contingent.

The testamentary trust in the present case is much simpler and more straightforward than those in the cases discussed above. For instance, it contains no language that could be remotely construed as a contingency, let alone a clearly and plainly stated one. Husband presents no authority for his position that his interest in the trust did not vest prior to the parties' separation, and we find none. Husband's reliance on *Hutnik, supra,* discussed above, is misplaced. Based upon the above discussion, we conclude that Husband's future interest in the testamentary trust created by his grandfather vested immediately upon Husband's birth. *Keller v. Lees, supra; Newlin's Estate, supra; Edward's Estate,* 255 Pa. 358, 99 A. 1010 (1917). Accordingly, his interest in this property vested before Husband's separation from Wife.

■ Our inquiry does not end here, however. We must proceed to the question of whether the legislature intended to include in its definition of marital property the increase in the value of a vested future interest such as Husband's.

Although this question has not been addressed by the courts of the Commonwealth, we appreciate that this is primarily an issue of statutory interpretation. Against a background of the mandate to "[e]ffectuate economic justice between parties," 23 P.S. § 102(a)(6), the legislature enumerated types of property that could fairly be construed as having been accumulated during the marriage in 23 P.S. 401(e)(3), quoted above.

When interpreting a statute "[w]ords must be given their plain meaning, unless doing so would create an ambiguity, and we must interpret statutes in accordance with the legislative intent." *Semasek v. Semasek,* 509 Pa. 282, 502 A.2d 109 (1985); 1 Pa.C.S. § 1921. The plain meaning of the phrase "property acquired" is property that has actually come into possession. One could argue that a vested future interest is an interest that has come into possession. However, with no Pennsylvania precedent to guide us at this point, we decline to impose this possibly strained interpretation upon the statute; we decline to enlarge its purview to include present "possession" of future interests. Hence, we conclude that the increase in value of Husband's vested future interest in the trust does not come under the legislative definition of marital property.

We hold this with full awareness that we have also held, where the legislature has not expressly included pensions, that they are, nevertheless, whether vested or non-vested, marital property. *Ciliberti v. Ciliberti,* 374 Pa.Super. 228, 542 A.2d 580 (1988). With regard to pensions, we wrote that, because pension benefits are economic resources acquired with funds that would otherwise have been used to purchase other marital assets, they are thus marital property. *Major v. Major,* 359 Pa.Super. 344, 518 A.2d 1267 (1986). We are also aware that this Court has held that a vested future interest created by a testamentary trust may be attached by a creditor. In *Everson v. Everson,* 264 Pa.Super. 563, 400 A.2d 887 (1979), a Husband's vested future interest in a trust was attached when he refused to comply with a court order directing him to transfer to his

wife a one-half share of the property owned by the parties. However, we decline to analogize these sufficiently distinguishable situations to the present case.

We recognize also that, with regard to vested future interest in general, courts in other jurisdictions have come to conflicting conclusions pursuant to their divorce codes. For instance, in *Buxbaum v. Buxbaum*, 214 Mont. 1, 692 P.2d 411 (1984), the court held that a husband's remainder interest in a testamentary trust was included in the marital estate; *See also In Re Marriage of Bentson*, 61 Or.App. 282, 656 P.2d 395, petition denied 294 Or. 613, 661 P.2d 549 (1983), where the court held that a husband's interest in a testamentary trust was a marital asset. On the other hand, in *Loeb v. Loeb*, 72 N.C.App. 205, 324 S.E.2d 33 (1985), a wife's vested future interest in a family trust fund was considered separate property.

In addition, conflicts on this issue exist within a single jurisdiction. In *Frank G.W. v. Carol M.W.* (1983 Del. Supr.), 457 A.2d 715 (1983), the Delaware supreme court determined that a future interest could not be acquired within the meaning of the Delaware Divorce Code, 13 Del.C. § 1513, since a future interest has no possessory value, even though it may have present monetary worth. However, in *Gregg v. Gregg*, Del.Supr. 510 A.2d 474 (1986), the same court interpreted the *Frank* decision and reasoned that *Frank* did not stand for the proposition that a future interest could never have value as a marital asset. The court then determined that property interests not yet reduced to possession can be acquired during marriage within the meaning of § 1513 of the Delaware Divorce Code and if such an interest is in existence at the time of the divorce the interest is marital property. *Gregg, supra; see also* other cases in Annotation, *Future Interest—Divorce*, 62 A.L. R.4th 107 (1988).

We reiterate that, given the plain language of our Divorce Code, we decline to speculate upon legislative intent and so we hold that the increase in value of Husband's

vested future interest is not marital property. We do this recognizing that the legislature may at any time clarify or modify the statute.

We recognize further that the lower court properly considered the existence of the trust when awarding Wife alimony and a greater share of the marital assets. *See* 23 P.S. § 401(d)(5). By doing so, the court was able to effectuate economic justice between parties who are divorced, pursuant to the directive of the Divorce Code. *Hutnik v. Hutnik, supra; Anthony v. Anthony, supra; Cheng v. Cheng,* 347 Pa.Super. 515, 500 A.2d 1175 (1985). Hence, we hold that the trial court properly labeled and distributed the economic assets in this case and committed no abuse of discretion.

We supplement the trial court's analysis of Wife's Issue V by noting that Wife incorrectly states that she was awarded alimony in the amount of $400.00 per month. To the contrary, Wife was awarded $400.00 per week, an amount that the trial court determined was adequate. We agree.

At Issue IV, Husband argues that his life insurance policy, valued at $7,254.00 which was included in the equitable distribution by the trial court, is not marital property. However, he has not preserved this issue for our review since he has failed to include it in his Exceptions to the Master's Report. Hence, this issue has been waived pursuant to Pa.R.Civ.P. 1920.55(a).

Last, Husband's Issue VI challenges the court's denial of his Petition for Bifurcation. Husband agrees that bifurcation is an issue only if we remand this case. However, we are not remanding this case. Instead, we affirm the lower court order decreeing that the parties be divorced from the bonds of matrimony. Thus, we need not consider Husband's last issue.

The order of the trial court is affirmed.