611 A.2d 686

**Kathleen D. SOLOMON, Appellant,**

**v.**

**William J. SOLOMON, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1991.

Decided June 17, 1992.

Reargument Denied July 22, 1992.

116

Albert Momjian, Rachel R. Munafo, Julia McLaughlin, Philadelphia, for appellant.

Albert G. Blakey, III, York, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

In this appeal from an equitable distribution order we are asked to review: (1) the determination that the entire increase in value of appellant's non-marital trust qualifies as marital property; (2) the determination that appellee's business has no good will value; and (3) the timeliness of the valuation of marital assets by the trial court.[1]

We hold that the Superior Court improperly determined that the entire increase in value of appellant's non-marital trust qualifies as marital property and therefore reverse that part of the decision of the Superior Court. We further hold that the Superior Court properly affirmed the determination of the trial court that appellee's business had no good will value. Finally, we hold that the Superior Court did not abuse its discretion in refusing to remand this case to the trial court for revaluation of marital assets.

Kathleen and William Solomon were married on August 23, 1969. During their marriage, two significant events occurred giving rise to the first two claims of equitable distribution. In 1970, Kathleen became a beneficiary of an irrevocable trust created by her father, and in 1973, the parties purchased Pin Oak Lane Farm where William established an equine clinic and horse breeding business. Kathleen subsequently filed a complaint in divorce on July 30, 1984. The parties separated in April of 1985, and on July 16, 1985, a master was appointed

---

1. "In reviewing the propriety of an award of equitable distribution we are required to uphold the award absent an abuse of discretion by the lower court." *Hovis v. Hovis,* 518 Pa. 137, 141, 541 A.2d 1378, 1379 (1988).

with respect to the claims of alimony and distribution of property. On November 14, 1985, the trial court entered a final decree in divorce pursuant to 23 P.S. § 201(c),[2] and retained jurisdiction pending disposition of all economic claims.

On April 16, 1987, the master filed a report and recommendation for equitable distribution finding, *inter alia:* (1) the total increase in value of Kathleen's trust from its creation in 1970 until the date of final separation qualified as marital property; and (2) William's equine clinic and horse breeding business had no good will value. Both parties filed exceptions to the report and recommendation of the master. On June 2, 1988, the trial court issued an opinion disposing of all exceptions, and entered an order of equitable distribution which, *inter alia:* (1) rejected the finding of the master that the total increase in value of Kathleen's interest in the trust qualified as marital property; and (2) accepted the finding of the master that William's business had no good will value.

On cross-appeal, the Superior Court reversed that part of the decision of the trial court limiting the portion of the increase in value of Kathleen's trust which qualified as marital property, and affirmed that part of the decision of the trial court that found William's business had no good will value. This Court granted Kathleen's Petition for Allowance of Appeal.

■ Kathleen first claims that the Superior Court erred in determining that the entire increase in value of her trust qualified as marital property. We agree.

Pursuant to the terms of the 1970 irrevocable trust agreement, Kathleen and her three sisters were each entitled to a

---

**2.** 23 P.S. § 201(c) was repealed in 1990, and divorce by mutual consent is now controlled by a similar provision of the Divorce Code, 23 Pa.C.S. § 3301(c). 23 P.S. § 201(c) in effect at the time of the proceedings herein provided:

It shall be lawful for the court to grant a divorce where a complaint has been filed alleging that the marriage is irretrievably broken and 90 days have elapsed from the date of filing of the complaint and an affidavit has been filed by each of the parties evidencing that each of the parties consents to the divorce.

one-fourth interest in the trust.[3]   At all times, Kathleen was entitled to the income from her trust, but until she attained age thirty-five, she possessed only a limited right to withdraw up to $6,000 of principal.   Upon attaining age thirty-five on August 4, 1981, Kathleen was entitled to withdraw up to one-half of the principal, and upon attaining age forty on August 4, 1986, Kathleen was entitled to withdraw the remaining principal and terminate her trust.   Prior to termination of the trust, Kathleen was entitled to appoint by will only the portion of the trust that she would have been entitled to withdraw at the time of her death, with the remainder to pass to her issue, or if none, to the trusts of her three sisters.

With regard to Kathleen's trust, the master determined that the principal of the trust was a gift and, therefore, non-marital property pursuant to 23 P.S. § 401(e)(3).[4]   However, the master determined that the total increase in value of Kathleen's trust from 1970 until the date of final separation was marital property pursuant to 23 P.S. § 401(e).   The trial court agreed that the principal of the trust was non-marital property, but rejected the determination of the master as to the portion of the increase in value of Kathleen's trust that qualified as marital property.

**3.**   At the time of its creation, the "Donnelly Trust" was funded with stock valued at $1,140,000, which the trustee was obligated to divide into four separate and equal trusts pursuant to the Trust Agreement.

**4.**   23 P.S. § 401(e) was repealed in 1990, and the definition of marital property is now provided in a similar provision of the Divorce Code, 23 Pa.C.S. § 3501(a).   23 P.S. § 401(e) in effect at the time of the commencement of the proceedings herein defined marital property in relevant part as follows:

For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage except:

(3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage.

The Legislature amended this provision without relevant substantive change effective one month prior to the final distribution order of the trial court in 1988, as follows:

For purposes of this chapter only, "marital property" means all property acquired by either party during the marriage, including the increase in value prior to the date of final separation of any nonmarital property acquired pursuant to paragraphs (1) and (3), except: . . .

(3) Property acquired by gift, except between spouses;  bequest; devise;  or descent.

The trial court held that only the increase in value of one-half of Kathleen's interest in the trust from the date Kathleen attained age thirty-five, on August 4, 1981, until the date of final separation in April of 1985, was marital property. The trial court reasoned that Kathleen must have actually acquired the trust assets before they could give rise to an increase in value qualifying as marital property. Thus, since Kathleen did not acquire any right to withdraw the principal of the trust until she attained age thirty-five, the trial court held that any increase in value prior thereto was not marital property. On the other hand, because Kathleen was entitled to withdraw up to one-half of the principal of the trust when attaining age thirty-five, the trial court found that Kathleen had acquired this portion of the trust, and held that any increase in the value of this portion of the trust from the date of acquisition until the date of final separation was marital property. Finally, since the parties separated before Kathleen attained age forty on August 4, 1986, when she became entitled to withdraw the remaining one-half of the principal of the trust, the trial court found that Kathleen had not acquired this portion of the trust during the marriage, and held that any increase in value of this portion of the trust was not marital property.

The Superior Court reversed the decision of the trial court, and held that *at the time of the trial court hearing*,[5] Kathleen had acquired her right to withdraw the entire principal of the trust, and thus, the full increase in value of her trust since its creation was marital property. The Superior Court believed

5. We note that the Superior Court opinion does not reference the exact date that the trial court held such hearing, and a review of the record does not indicate that the trial court actually held a hearing on this equitable distribution claim. Therefore, Kathleen argues that the Superior Court compounded its error because, in the absence of a hearing by the trial court, the Superior Court should have used the date of the final hearing by the master, which occurred on March 13, 1986, before Kathleen attained age forty and obtained complete ownership and control of the trust. We do not believe resolution of this discrepancy controls the outcome of this case. It is unlikely that the Superior Court would have changed its result as Kathleen nevertheless acquired a complete interest in the trust prior to the equitable distribution order entered by the trial court on June 2, 1988, and to the extent this claim has merit, it merely provides further support for our decision herein.

its ruling would better reflect the economic circumstances of the parties at the time of final distribution.[6] We disagree.

The principal of Kathleen's trust, which was a gift, is clearly non-marital property pursuant to 23 P.S. § 401(e)(3). However-er, we have great difficulty in adopting the hindsight approach applied by the Superior Court regarding the increase in value of Kathleen's trust. In reaching its decision the Superior Court relied upon *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988).

In *Sutliff*, this Court held that marital assets should be valued for purposes of equitable distribution as of the date of distribution rather than the date of final separation. The equitable power conveyed upon the judiciary in 23 P.S. § 401(d)[7] necessarily requires valuation as of a date reason-ably proximate to the ultimate date of distribution in order to achieve a "just" distribution based upon the "present" needs of the parties. *Sutliff* requires distribution of marital assets to be based upon proper consideration of the economic circum-stances of the parties at the time they would actually receive the property. It in no way addresses the question of whether particular assets are deemed to be marital, as opposed to individually owned.

We recognize that the Superior Court in the case *sub judice* was reasonably concerned with our guidance in *Sutliff* in its attempt to consider the circumstances of the parties at the time of final distribution. Kathleen's economic circumstances

6. *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (1988); and 23 P.S. 401(d)(6).

7. 23 P.S. § 401(d) has since been repealed, and the substance thereof is now provided in an almost identical provision of the Divorce Code, 23 Pa.C.S. § 3502(a). The relevant portion of 23 P.S. § 401(d) in effect at the time of the proceedings herein provided:

In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors including: ...

(10) The economic circumstances of each party, *including Federal, State and local tax ramifications, at the time the division of property is to become effective.* (emphasis added to reflect text inserted by amendment in 1988).

had clearly been enhanced at the time of distribution as she had acquired the assets of the trust. Nevertheless, such equitable considerations alone cannot serve to reclassify assets that are properly deemed to be non-marital under the statutory provision governing this determination.

■ Former 23 P.S. § 401(e), which was in effect during the majority of the proceedings herein,[8] defined marital property in relevant part as follows:

For purposes of this chapter only, "marital property" means all property *acquired* by either party during the marriage except,

(3) Property *acquired* by gift, bequest, devise or descent except for the increase in value during the marriage. (emphasis added).

Accordingly, pursuant to Section 401(e) we must determine what portion of the trust Kathleen actually "acquired" during her marriage, since only the increase in value of property actually acquired can be deemed to be marital property.[9]

**8.** As noted above, 23 P.S. 401(e) was amended in 1988 during the pendency of this action and subsequently repealed in 1990 after the trial court issued the final equitable distribution order. The record does not reveal whether the trial court applied the provision in effect for the majority of the proceedings herein or that encompassing the 1988 amendments. However, since the substance of the definition of marital property relevant to the issue before us was unchanged by the 1988 amendment, we choose to apply the provision in effect at the time of the commencement of the proceedings herein, as did the Superior Court.

**9.** It is important to note the distinction between the income generated by the principal of the trust and the appreciation of the principal itself. We are concerned only with the appreciation of the principal itself, which is the "increase in value" that potentially qualifies as marital property. In the case *sub judice* this is essentially appreciation of stock. We are not concerned with any dividend or interest income generated by the trust that was received by the parties prior to or during the marriage, or any dividend or interest income generated by the trust after the date of final separation, which would clearly belong to Kathleen. However, while neither of the parties have specifically raised such a claim, if there had been any dividend or interest income that was not paid to the parties, but remained in the trust, as in the nature of any investment during the marriage, such would necessarily be deemed marital property, and it together with any income generated thereby, would be subject to equitable distribution.

In the case *sub judice*, Kathleen had no right of ownership or control over the principal of her trust until she reached age thirty-five. Kathleen's interest amounted to a mere expectancy as it was contingent upon her attaining age thirty-five. Thus, Kathleen did not obtain ownership and control over this property pursuant to Section 401(e) until she attained age thirty-five. Any increase in value of this trust prior to Kathleen acquiring any right to possession and control of the principal cannot be included as marital property.[10]

While Kathleen did obtain the right to one-half of the principal of her trust upon attaining age thirty-five, which gave rise to increases in value qualifying as marital property, she had no right to the remaining one-half of the principal until attaining age forty. Since the parties separated prior to Kathleen attaining age forty, Kathleen did not obtain ownership or control over the right to the remaining one-half of the principal pursuant to Section 401(e) prior to the date of final separation, and thus, the increase in value of this remaining one-half interest cannot be included as marital property.

■ Given the plain meaning of the phrase "property acquired" in Section 401(e), and the inapplicability of our decision in *Sutliff,* the decision of the Superior Court in the case *sub judice* is based upon a strained interpretation of Section 401(e). We cannot agree with the decision of the Superior Court that property which has not actually come into the possession or control of the beneficiary may qualify as marital property pursuant to Section 401(e).

Furthermore, while we recognize that Kathleen ultimately realized the expectancy interest at issue, we cannot support the approach used by the Superior Court because it would

---

**10.** *See generally Powell v. Powell,* 395 Pa.Super. 345, 577 A.2d 576 (1990) (wife's interest in a trust acquired prior to marriage in which she had no access to income until her mother's death and no right to the principal until twenty years thereafter did not qualify as marital property since her interest was purely speculative); and *McGinley v. McGinley,* 388 Pa.Super. 500, 565 A.2d 1220 (1989) (Husband's interest in testamentary trust contingent upon his surviving his father was not marital property given the plain meaning of "property acquired" in 23 P.S. 401(e), which is "property that has actually come into possession").

compel future decisions based *not* upon the nature of the particular asset involved but instead upon whether the objecting party was able to protract the litigation beyond the date that the beneficiary actually acquires the interest. Such protracted litigation simply cannot affect the determination of whether a particular asset qualifies as marital property. Rather, once an asset is determined to be marital property, the only consideration arising from such delay is the amount that the marital property increased in value during the period between the date of final separation and the date the trial court eventually concludes the protracted litigation through an order of equitable distribution.[11]

Accordingly, we hold that the increase in value of Kathleen's trust prior to her thirty-fifth birthday is not marital property as Kathleen did not obtain sufficient ownership and control over the principal until she attained age thirty-five. Furthermore, as Kathleen only acquired a one-half interest in the principal of the trust upon attaining age thirty-five, we hold that only the increase in value of that one-half interest in the principal of the trust occurring after the date of acquisition on her thirty-fifth birthday, until the date the parties separated, is marital property. Finally, we hold that because Kathleen did not obtain ownership and control over the remaining one-half of the principal of the trust until after the parties separated, any increase in the value of this part of the trust is not marital property. Therefore, we reverse that part of the decision of the Superior Court that held that the entire increase in value of Kathleen's interest in the trust was marital property.

11. We note that in applying this concept to the case *sub judice*, the trial court would be necessarily compelled to take into consideration any change in value of the portion of the trust determined to be marital property, which occurs after the date of final separation through the date of distribution. This only involves consideration of the change in value of the marital assets during the period of delay pursuant to our mandate in *Sutliff*, and thus, does not include any change in value of either the non-marital principal of the trust itself or that portion of the increase in value of the trust determined to be non-marital property.

124

■ Kathleen's second claim on appeal is that the Superior Court abused its discretion in affirming the determination of the trial court that William's business had no good will value. We disagree.

■ This is the first time this Court has been presented with the propriety of including the value of the good will of a business as a marital asset, where good will was not subject to the partnership agreement itself.[12] Generally, we agree with the Superior Court that if a business qualifies as marital property pursuant to 23 P.S. § 401(e), then to the extent that such business has established good will, such value should be considered for purposes of equitable distribution.

■ However, the determination of whether a business has established good will is controlled by the nature of the business itself. Since good will is essentially positive reputation, the factors that have given rise to the positive reputation will necessarily control the determination of whether good will exists for purposes of equitable distribution. If the positive reputation is due only to the reputation of a single individual as opposed to the business entity in general, then the business has no good will for purposes of equitable distribution. The value is that of the single individual and not the entity in general, and this value is not capable of surviving the disassociation of the individual from the business entity. However, as the single individual's contributions become less substantial, the good reputation enjoyed by a business entity becomes less related to the single individual and more a product of the

12. In *McCabe v. McCabe,* 525 Pa. 25, 575 A.2d 87 (1990), we were presented with a slightly different equitable distribution question, wherein a majority of this Court decided that the value of McCabe's partnership interest in a law firm was controlled by the partnership agreement. Pursuant to the specific provisions of the partnership agreement, the "going concern" value of the partnership, which includes assets such as equipment, books and cash, could not be included in the value of McCabe's partnership share as such could not be realized by any individual partner upon the sale of his partnership interest. We note that the decision in *McCabe* was further removed from the facts of the case *sub judice* because the trial court therein was not presented with the propriety of including good will as part of the "going concern" value, as a good will component was not included in the appraisals submitted by the parties.

business entity in general, and thus, more capable of surviving the disassociation of the single individual.

In the case *sub judice,* the record facts indicate that William was engaged as a sole practitioner of veterinary medicine specializing in the breeding of horses. The Superior Court determined that given the substantial record evidence that the success of William's business was dependent solely on his own expertise, the trial court did not abuse its discretion in finding that William's business had no good will value.

Kathleen claims that the reputation of the business was based not only upon William's professional contributions, but also upon the contributions of other members of the staff, which included veterinarians, together with the general facilities and commodities of the business unrelated to veterinary practice or the breeding of horses. We disagree.

It is evident that the trial court paid great attention to the conflicting evidence concerning good will value. The trial court found particularly persuasive the testimony of numerous clients concerning the importance of William's professional expertise in sustaining the various aspects of the business. In contrast, the trial court was not persuaded by Kathleen's claim that the other commodities of the business and the existence of other staff veterinarians supported a finding of good will separate and apart from William's professional reputation. The trial court specifically found that the contributions of other veterinarians were minor in that only two recently graduated veterinarians were employed for a brief period of time and they brought no new business to the practice. Accordingly, the trial court found that William's business possessed no good will value.

As there was more than sufficient evidence to support a finding that William's business possessed no good will value outside his professional reputation, we hold that the Superior Court did not abuse its discretion in affirming the decision of the trial court on this issue.

■ Kathleen's final claim is that the Superior Court abused its discretion in refusing to remand this case to the

trial court for revaluation of marital assets where the marital assets were originally valued in 1985. We disagree.

In *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988), this Court held that marital assets are to be valued as of the date of distribution rather than the date of final separation. In the case *sub judice,* the parties were separated in 1985, the marital assets were valued in 1985, and the initial date of distribution was in 1988. Nevertheless, Kathleen did not attempt to update the values of marital assets during the pendency of this matter before the trial court. Her first request for a hearing to determine revised valuations of marital assets was made before the Superior Court.

Furthermore, this has been a very complex case prolonged by numerous delays attributable to both parties. A remand for revaluation of marital assets would only impose further financial burdens on the parties and cause additional delay. Any potential benefit to be realized through the difficult task of revaluing marital assets at this late date will be far outweighed by the benefits of concluding this matter. Therefore, we hold that the Superior Court did not abuse its discretion in refusing to remand this case to the trial court for a determination of revised valuations of marital assets.

The order of the Superior Court is affirmed in part and reversed in part, and the equitable distribution order of the Court of Common Pleas of York County is reinstated.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

ROLF LARSEN, Justice, dissenting.
I dissent and would affirm the Superior Court Order.

PAPADAKOS, J., joins this dissenting statement.