Tracy L. BIESE, Appellee

v.

Lee C. BIESE, Appellant.

Superior Court of Pennsylvania.

Argued June 9, 2009.

Filed July 21, 2009.

James E. Gavin, Wyomissing, for appellant.

Gary R. Swavely, Jr., Reading, for appellee.

BEFORE: ALLEN, FREEDBERG, and CLELAND, JJ.

OPINION BY ALLEN, J.:

¶ 1 Lee C. Biese ("Husband") appeals from the order entered by the trial court which resolved the economic claims between Husband and Tracy L. Biese ("Wife") in their divorce proceedings. We affirm in part and reverse in part, and remand with instructions.

¶ 2 The trial court ably summarized the pertinent facts as follows:

The parties were married on August 7, 2004, in the Bahamas. This was the third marriage for [Wife] and the second marriage for [Husband]. The parties separated in September 2006, after approximately two (2) years of marriage. There were no children born of the marriage. Husband continues to reside in the marital home in Berks County, a home he owned prior to the marriage. Wife now resides in Camden, New Jersey, although she works in Berks County as a CAT scan technician for the Reading Hospital and Medical Center. Husband is employed as a financial analyst.

Trial Court Opinion, 12/19/08, at 2. Wife filed a *pro se* divorce complaint on October 24, 2006. Husband filed an amended answer in which he requested that the parties' marital estate be equitably distributed. Wife retained counsel and filed an amended complaint on March 8, 2007, which included counts for equitable distribution, no fault divorce, alimony *pendente lite,* and alimony, as well as a request for an award of counsel fees, costs and expenses. Following the appointment of a Special Master ("Master"), a hearing was held on February 22, 2008. Both parties appeared with counsel and presented testimony and documentary evidence.

¶ 3 On June 10, 2008, the Master filed his report and recommendation ("Master's Report"). According to the trial court:

> The Master found that the income of each party fluctuated throughout the course of the marriage, and that Wife obtained training in her profession during the marriage which increased her earning capacity. Despite this, the Master found that neither party presented evidence that they overwhelmingly provided financial support to the other party during the marriage. The Master also found that both parties made relatively equal contributions to the marital estate. Based on these findings, as well as the short duration of the marriage, the Master decided that the marital estate should be divided in an equal manner.

*Id.* Specifically, in his report, the Master stated:

> The testimony of the parties and the evidence that each has introduced into the record leads the Master to recommend that the parties be treated equally in the resolution of the issue of equitable distribution. The Master has awarded to each party the property that he or she maintained in his or her custody or

control at the time of the parties' separation and has equalized the benefit received by Husband in the increase in value of the former marital residence, by an award of cash to Wife. With the award of a payment of $6,300.00 to Wife, it is the intention of the Master to achieve a 50/50 split of the marital estate, and the Master recommends that such a division be awarded to the parties as a resolution of the related claim of equitable distribution of marital property.

Master's Report, 6/10/08, at 12. In addition, while the Master recommended denying Wife's request for alimony *pendente lite* and alimony, he did award her $1,000 in counsel fees and $300.00 in costs.

¶ 4 Both parties filed exceptions, and the trial court heard argument on August 29, 2008. Thereafter, the trial court denied both parties' exceptions and entered a decree of divorce. Husband's timely appeal followed. Both Husband and the trial court have complied with Pa.R.A.P. 1925.

¶ 5 Husband raises the following issues on appeal:

A. WHETHER THE EQUITABLE DISTRIBUTION AWARD WAS BASED ON MULTIPLE ERRORS OF OMISSION AND ERRORS IN CALCULATION THAT RESULTED IN AN INEQUITABLE DISTRIBUTION OF MARITAL PROPERTY?

1. WHETHER THE EQUITABLE DISTRIBUTION AWARD WAS IN ERROR FOR FAILING TO APPORTION $43,400 OF MARITAL DEBT FROM A HOME EQUITY LOAN BETWEEN THE PARTIES?

2. WHETHER THE EQUITABLE DISTRIBUTION AWARD WAS IN ERROR FOR FAILING TO APPORTION ANY MARITAL

DEBT BETWEEN THE PAR-
TIES?

3. WHETHER THE EQUITABLE
DISTRIBUTION AWARD WAS
IN ERROR SINCE IT RELIED
UPON AN INCORRECT OUT-
STANDING HOME EQUITY
LOAN BALANCE TO THE
VALUE OF THE PROPERTY?

B. WHETHER THE TRIAL COURT
ERRED BY DISMISSING THE
EXCEPTIONS TO THE MAS-
TER'S REPORT ASSERTING
THE MASTER ERRED BY FAIL-
ING TO FOLLOW THE DIC-
TATES OF 23 PA.C.S.A.
§ 3501(a.1) WHEN DETERMIN-
ING THE INCREASE IN VALUE
IN THE RESIDENCE?

C. WHETHER THE ERRORS OF
FAILING TO PROPERLY AP-
PORTION DEBT AND IMPROP-
ERLY VALUE THE INCREASE
OF THE VALUE IN THE RESI-
DENCE RESULTED IN THE
FURTHER ERROR OF AWARD-
ING $7,600.00 IN ASSETS, AT-
TORNEYS' FEES AND EX-
PENSES?

1. WHETHER THE TRIAL
COURT ERRED BY DISMISS-
ING THE EXCEPTIONS TO
THE MASTER'S REPORT
AWARDING ATTORNEY'S
FEES AND COSTS?

2. WHETHER THE TRIAL
COURT ERRED BY DISMISS-
ING THE EXCEPTIONS TO
THE MASTER'S REPORT
AWARDING WIFE $6,300.00?

Husband's Brief at 4–5. We will address
these issues in the order presented.

■ ¶ 6 A trial court has broad dis-
cretion when fashioning an award of equi-
table distribution. *Dalrymple v. Kilishek*,
920 A.2d 1275, 1280 (Pa.Super.2007). Our

standard of review when assessing the pro-
priety of an order effectuating the equita-
ble distribution of marital property is
"whether the trial court abused its discre-
tion by a misapplication of the law or
failure to follow proper legal procedure."
*Smith v. Smith*, 904 A.2d 15, 19 (Pa.Su-
per.2006) (citation omitted). We do not
lightly find an abuse of discretion, which
requires a showing of clear and convincing
evidence. *Id.* This Court will not find an
"abuse of discretion" unless the law has
been "overridden or misapplied or the
judgment exercised" was "manifestly un-
reasonable, or the result of partiality, prej-
udice, bias, or ill will, as shown by the
evidence in the certified record." *Wang v.
Feng*, 888 A.2d 882, 887 (Pa.Super.2005).
In determining the propriety of an equita-
ble distribution award, courts must consid-
er the distribution scheme as a whole. *Id.*
"[W]e measure the circumstances of the
case against the objective of effectuating
economic justice between the parties and
achieving a just determination of their
property rights." *Schenk v. Schenk*, 880
A.2d 633, 639 (Pa.Super.2005) (citation
omitted).

■ ¶ 7 In support of Issue A(1), Hus-
band asserts that "[t]he primary error of
omission was the failure to apportion debt
between the parties. This included the
largest debt being [$43,400.00] in home
equity debt. Although identified in the
Master's Report, it was not assigned to
either party[;] it was thereby assigned by
default to [Husband]." Husband's Brief at
9. According to Husband, the trial court
should have ordered Wife to pay half of
the amount due and owing on the home
equity line.

¶ 8 The trial court rejected Husband's
claim:

Clearly, the Master considered the
$43,400.00 amount, but found that it was

not a marital debt. Contrary to Husband's argument, the Master found that after the pre-marital debt was paid off, the remaining money from the $75,000.00 distribution was a cash contribution to the marital estate. The Master's reasoning is supported by case law. In *Lowry v. Lowry,* [375 Pa.Super. 382, 544 A.2d 972 (1988) (citations omitted)], the Superior Court held: Where a spouse places separate property in joint names, a gift to the entireties is presumed absent clear and convincing evidence to the contrary.

The Court supported the Master's decision regarding this issue due to the fact that the home was [Husband's] non-marital, or separate property. Accordingly, it was [Husband] who was responsible for securing the home equity line of credit. Further, Husband had the benefit of satisfying the pre-marital debt his residence was encumbered with at the time of the marriage. Husband could have set aside the remainder of the loan as his property, but he chose to transfer the remainder of the loan to the marital estate. Thus, as the Master correctly ruled, the remainder of the loan ceased to be separate property when Husband transferred the proceeds to the parties' joint estate. As this transfer was a gift, the responsibility for paying back the loan remains Husband's sole responsibility.

The Court does note that the home equity line of credit was used to purchase an automobile for [Wife]. Wife retained this automobile following separation, but in doing so, she made a payment of $10,000.00 in order for Husband to transfer the title to the automobile to her. Accordingly, these facts do not change the Court's analysis of this issue.

Trial Court Opinion, 12/19/08, at 4–5 (citation omitted).

¶ 9 Our review of the record and relevant case law supports the trial court's conclusion. Husband's attempt to distinguish *Lowry, supra,* is unpersuasive. Thus, we conclude Husband's first issue lacks merit.

■■ ¶ 10 In Issue A(2), Husband asserts that all of the parties' credit card debt should not have been apportioned to him. According to Husband, if the Master's goal was a 50/50 split of the marital estate, he should have assigned half of the $10,584.00 credit card debt to Wife. We cannot agree. Just "because a debt is characterized as marital[, this delineation] is not necessarily determinative of which party is liable for its satisfaction." *Hicks v. Kubit,* 758 A.2d 202, 204 (Pa.Super.2000). The trial court rejected Husband's claim:

Between divorcing parties, debts which accrue to them jointly prior to separation are marital debts. See *Duff v. Duff,* 510 Pa. 251, 507 A.2d 371 (1986). However, this does not mean that the debts have to be divided between the parties. What [Husband] fails to consider is that the Master determined a 50–50 division of the Marital estate was appropriate, meaning each party would retain half of the marital estate when the division was completed. One of the options for the Master in dividing the property was to assign the debt to [Husband] and offset the debt with an award of marital assets. The Superior Court has noted that it is "within the trial court's discretion to credit marital expenses to one of the parties and take such credit into account when dividing marital property." *Winters v. Winters,* [355 Pa.Super. 64, 512 A.2d 1211, 1216 (1986)]. The Master chose this method of distribution. For example, in addition to the marital debt assigned to [Husband], Husband was also credited

with $16,500.00 for the reduction ... in the purchase money and home equity loans which occurred during the marriage. Accordingly, there was no error by the Master in failing to apportion the debt between the parties. The Court was satisfied that the global division of the marital estate resulted in the 50–50 division of the marital estate the Master was seeking to achieve.

Trial Court Opinion, 12/19/08, at 5–6. Once again, our review of the record and relevant case law supports the trial court's determinations. We additionally note that the Master awarded the entire increase in value of the marital residence to Husband, and Husband admitted that almost $5,000.00 in credit card debt was due to his losses in playing online poker.

¶ 11 In Issue A(3), Husband contends that the Master used the sum of $71,000.00 in its calculation of the net increase in value of the marital residence when the actual outstanding balance due and owing on the home equity loan was $72,081.00. The trial court acknowledges this error, but found it to be de minimus, since "dividing the marital estate with mathematical precision is unnecessary." Trial Court Opinion, 12/19/08, at 9 (quoting *Smith v. Smith*, 595 Pa. 80, 938 A.2d 246, 248 n. 2 (2007)). While we agree with the trial court that any change in the Master's calculation would be minimal when the correct number is used, we find merit to Husband's next claim, and therefore remand this issue for the correct calculation of the outstanding balance due and owing on the home equity line close to the date of the evidentiary hearing.

¶ 12 In Issue B, Husband asserts that the Master erred by failing to follow the dictates of 23 Pa.C.S.A. § 3501(a.1) when determining the increase in value of the marital residence. We agree.

¶ 13 "The Divorce Code does not specify a particular method of valuing assets." *Smith*, 904 A.2d at 21. Thus, "[t]he trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." *Id.* at 21–22. When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." *Schenk*, 880 A.2d at 642 (citation omitted). "Where the evidence offered by one party is uncontradicted, the court may adopt this value even [though] the resulting valuation would have been different if more accurate and complete evidence had been presented." *Id.* "A trial court does not abuse its discretion in adopting the only valuation submitted by the parties." *Id.*

¶ 14 Section 3501(a.1) of the Divorce Code provides, in pertinent part, as follows:

**(a.1) Measuring and determining the increase in value of nonmarital property.—**

The increase in value of any nonmarital property acquired pursuant to subsection (a)(1) and (3) shall be measured from the date of marriage or later acquisition date to either the date of final separation or the date as close to the hearing on equitable distribution as possible, whichever date results in the lesser increase.

23 Pa.C.S.A. § 3501(a.1). An accompanying official comment provides the following: "Section 3501(a.1) is new. The first sentence of this subsection essentially codifies the decision in *Litmans v. Litmans*, [449 Pa.Super. 209, 673 A.2d 382 (1996)], as it pertains to when to measure the increase in value of nonmarital property."

¶ 15 The Master accepted Wife's expert appraisal with regard to the value of the marital residence. Within his report, the

expert opined that the house was worth $266,000.00 when the parties separated in 2006, and worth $255,000.00 in January 2008, the time of the evidentiary hearing. The Master decided to use the higher sum of $266,000.00, subtracted a $136,000.00 mortgage liability and a $71,000.00 home equity liability, to yield a net home equity of $59,000.00. The Master then determined that, because the net home equity at the time of marriage was $39,000.00, the net increase in the value of the marital residence was $20,000.00. Husband asserts that, had section 3501(a.1) been followed, the proper calculation would have resulted in the following: $255,000.00, the value in January 2008, less the $136,000.00 mortgage and less $72,000, the accurate amount of the home equity loan, resulting in a net home equity of $47,000.00, and a net increase in the value of the marital residence of $8,000.00.[1]

¶ 16 The trial court supported the Master's use of the separation date valuation:

> The Master used the value of the home at the time of separation in his report and for equitable distribution purposes. [Husband] believes that the Master should have used the value of the home at the time of the Master's hearing as it was a lower value and cites to 23 PA.C.S. § 3501(a.1) to support this argument.

> * * *

> The explanatory notes following 23 PA.C.S. § 3501(a) states that section (a.1) is intended to be a codification of the holding in [Litmans, supra. Litmans] states in part "[w]e must conclude, as husband in the instant case has argued, that the [Pennsylvania Supreme Court's] statement in footnote eleven [in Solomon v. Solomon, 531 Pa. 113, 611 A.2d 686 (1992)] is mere dictum, and that the reinstatement of the trial court's order, **which limited the increase in value of the non-marital asset to that which occurred prior to final separation, represents the actual decision of the Solomon court.**" (emphasis added). Further, [Litmans] states the following:

> > In the instant case, the lower court used the date of distribution to determine the increase in value of the non-marital asset, the residence at Dunmoyle Street. Under the above authority, this was error. The proper date for determining the increase in value of the residence was the date of separation. As to the delay in distribution which followed (1985 to 1993), we find footnote eleven in [Solomon] to refer to a situation in which the increase in value of the non-marital asset is determined as of the date of separation, then there ensues a long period of delay between separation and distribution, and the asset itself then decreases in value by the time of distribution. In such a case, footnote eleven would require the trial court to consider the "change in value" of the non-marital asset as a result of the delay. In the instant case, however, it is clear that the residence did not decrease, but increased in value during the period of delay. (1985 to 1993). Accordingly, the increase in value of this non-marital asset should have been determined as of the date of separation. Litmans, [449 Pa.Super.] at 235–236[, 673 A.2d at 394–395].

---

1. We reject Wife's argument that, if remanded, the value of the marital residence will again have to be determined because the marital estate has yet to be distributed. Section 3501(a.1) does not require a "date of distribution" valuation, but rather, a value close to the time of the equitable distribution hearing. As this value has already been determined, no new evidence is required upon remand.

Thus, the *Litmans* case and the notes to 23 PA.C.S. § 3501(a.1) indicate that if the property in question decreases in value from the time of separation until the time of the Master's hearing, the value at the time of the Master's hearing should be used only if there was an extended period of time between separation and the Master's hearing. Such a delay did not occur in this case as the Master's hearing was held less than eighteen months following separation. Accordingly, the Master committed no error, and as he stated in his report "the only legal title owner of the realty was Husband. Thus, he solely bears the benefit or detriment of such ownership after the date of the parties' separation." (Master's Report, pg. 6).

Trial Court Opinion, 12/19/08, at 7–8.

¶ 17 Although section 3501(a.1) became effective in 2005, our review has disclosed no appellate court decision discussing its effect on the proper valuation of non-marital property. While the trial court correctly cites the section and this Court's holding in *Litmans,* its conclusion that section 3501(a.1) applies only when there is an extended delay between separation and distribution is inconsistent with the clear language of the section, which contains no such limitation. When the words of a statute are clear of all ambiguity, they are not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(b). We read the statutory language at issue to be consistent with the *Litmans* decision; in *Litmans,* despite the post-separation increase in value, this Court accepted the value of the marital residence at the time of separation because it was the lesser amount. This is consistent with the language of section 3501(a.1). In short, the statutory language cannot be read as intending anything other than the lesser of the valuations at separation vis-à-vis the time of the Master's hearing be used when establishing the increase in value of the non-marital property. Thus, in this case, because the valuation of the former marital residence was lower at the time of the Master's hearing, the clear language of section 3501(a.1) requires that it be used to determine any increase in value during the parties' marriage. We therefore reverse this part of the trial court's equitable distribution order and remand for a recalculation of the marital increase in value of former marital residence, using the value of the house at the time of the Master's hearing.

¶ 18 In Issue C(1), Husband asserts that the trial court erred in adopting the Master's recommendation that Wife be awarded counsel fees in the amount of $1,000.00, as well as $300.00 in costs. We cannot agree. As this Court has summarized:

We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

* * *

Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Teodorski v. Teodorski,* 857 A.2d 194, 201 (Pa.Super.2004) (citation omitted). "Counsel fees are awarded only upon a showing of need." *Id.* "Further, in determining whether the court has abused its discre-

tion, we do not usurp the court's duty as fact finder." *Id.*

¶ 19 Stated differently, "[o]ur ability to review the grant of attorney's fees is limited, and we will reverse only upon a showing of plain error." *Diament v. Diament*, 816 A.2d 256, 270 (Pa.Super.2003) (citation omitted). "Plain error is found where the decision is based on factual findings with no support in the evidentiary or legal factors other than those that are relevant to such an award." *Id.*

¶ 20 According to Husband, "both parties incurred attorney fees and costs for appraisals. Both parties are of similar age and are both employed. During the marriage both parties had periods of unemployment. There was nothing presented in this case that suggests [Wife's] financial circumstances dictated an award of counsel fees and costs." Husband's Brief at 21. Within his report, the Master reasoned:

Wife in her Amended Complaint in Divorce filed in March 2007 has requested an award of counsel fees, costs and expenses. In furtherance of her claim for counsel fees, Wife submitted evidence of her attorney's fees incurred during the course of the litigation totaling approximately $7,900.00, of which she has been able to pay approximately $5,000.00. Wife presented her claim for counsel fees at a time when, in reviewing the prior year[']s income for 2006, Wife had gross wages of approximately $14,000.00 and Husband had gross wages of approximately $25,600.00. Since that time the parties' incomes have equalized, reducing the need to consider a significant award to Wife for counsel fees incurred during the course of the divorce litigation.

Wife also introduced evidence of the fact that she incurred an expense of $500.00 in securing an appraisal of [the former marital residence] and further-

more incurred the expense of $100.00 in arranging to have [the expert] appear at the time of the Master's hearing to testify with regard to the results of his appraisal. In considering the differences in the parties' incomes for calendar year 2006, the Master recommends that Husband contribute $1,000.00 toward the cost of Wife's counsel fees in this matter. With regard to the expenses incurred by Wife in obtaining an appraisal of Husband's non-marital real estate and incurring the expense of arranging to have [the expert] come to the hearing to testify about his appraisal, it is the recommendation of the Master that Husband contribute $300.00 toward the costs incurred by Wife regarding the [expert's] appraisal.

Master's Report, 6/10/08, at 12–13.

¶ 21 The trial court determined that the above analysis by the Master "was a reasonable resolution as to" the issue of counsel fees and costs. Trial Court Opinion, 12/19/08, at 10. We discern no abuse of discretion, as our review of the record reveals that Wife established a need for such an award. Thus, Husband's claim to the contrary is without merit.

¶ 22 In Issue C(2), Husband's final claim, he asserts that the trial court erred by adopting the Master's cash award of $6,300.00 to Wife in order to achieve the intended result of a 50/50 split of the marital estate. We have already determined that a remand is necessary for recalculation of the equitable distribution scheme, given the use of the wrong figure when determining the increase in value of the former marital residence. Thus, we need not consider Husband's claim further. Nevertheless, we note that neither the Master nor the trial court included any calculations or adequately explained otherwise how the $6,300.00 awarded to Wife equally split the marital estate. Thus,

upon remand and recalculation, sufficient explanation must be provided in order to facilitate any future appellate review.

¶ 23 In sum, we affirm the trial court's order in all respects save the figures used in calculating the net increase in value of the marital residence. Upon remand $255,000.00 shall be used as the value of the home, and an accurate amount for the balance owed on Husband's home equity line close to the time of the evidentiary hearing shall be used. An adequate explanation of this recalculation and any cash award to Wife in order to effectuate the goal of a 50/50 split of the marital estate must be provided.

¶ 24 Order affirmed in part and reversed in part. Case remanded with instructions. Jurisdiction relinquished.