J. S06033/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM D. STEVENS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KIMBERLY A. STEVENS, | : | No. 1542 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Decree Entered June 26, 2018,
in the Court of Common Pleas of Wayne County
Domestic Relations Division at No. 2012-30070

| | | |
|---|---|---|
| WILLIAM D. STEVENS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 1626 EDA 2018 |
| | : | |
| KIMBERLY A. STEVENS | : | |

Appeal from the Decree Entered June 26, 2018,
in the Court of Common Pleas of Wayne County
Domestic Relations Division at No. 2012-30070

BEFORE:  BOWES, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 20, 2019**

In these consolidated cross-appeals, Kimberly A. Stevens ("Wife") and

William D. Stevens ("Husband") challenge the trial court's equitable

distribution of the marital estate in the divorce proceedings between the

parties.  After careful review, we affirm.

The record reflects that Husband initiated these proceedings by filing a complaint in divorce on February 6, 2012. Husband's claims for divorce and equitable distribution proceeded before a master. Following two hearings and the submission by the parties of proposed findings of fact, conclusions of law, briefs, and relevant documents, the master filed a report and recommendation wherein she made the following findings of fact:

1. The parties were married on October 26, 1985, in Hawley, Wayne County, Pennsylvania.

2. This is the first marriage for both parties.

3. The Complaint in Divorce was filed on February 6, 2012.

4. [Husband] contends the couple separated on or about December 18, 2010.

5. [Wife] contends the couple separated on or about May 15, 2011.

6. The parties have been married for over 25 years.

7. Both parties are and have been residents of the Commonwealth of Pennsylvania in excess of six months.

8. The couple has two adult children.

9. Husband is 53 years of age, [born in April 1963]. Wife is 52 years of age, [born in March 1964].

10. Husband is self-employed as the owner and operator of W.D. Stevens, Inc.[,] which is a construction company.

11. Wife owns a Century 21 franchise and is employed as a real estate broker.

12. During the marriage the parties accumulated the following assets: a marital residence, two commercial properties, motor vehicles, an FSC brokerage account No[.] 3MA-75826, Husband's business, W.D. Stevens, Inc. and Wife's real estate business, Century 21 Select.

13. Throughout the marriage Husband maintained a pre-marital account with FSC but sometime in 2011 and/or 2012 Husband transferred the FSC account to a Morgan Stanley account. At the time of the hearing, this account had an approximate value of $404,217.21.

14. The marital residence, located at 1189 Goose Pond Road, Lake Ariel, Paupack Township, Wayne County, Pennsylvania, was appraised at $578,000 in February of 2013, two years post-separation. The marital residence is a large residential home that sits on two parcels totaling 2.2 acres.

[15.] The appraisal was performed by Peter Porter, Hawley, Pennsylvania.

[16.] At the time of the hearing, Porter placed a reduced value of $538,000 on the marital residence due to problems with the roof and heating system.

[17.] The marital residence is a large home of approximately 5,000 square feet, with three bedrooms, four baths, and a four car garage. The marital residence is not a lakefront property.

[18.] The marital residence is within a few hundred feet of Lake Wallenpaupack [and] has lake access, including a boat slip.

[19.] An appraisal of the marital residence was performed by Gerald Romanik in September of

2015. He placed a fair market value of $771,600.00 on the residence.

[20.] The fair market value of the residence was adjusted downward because it is not a lakefront property.

[21.] There are two mortgages on the marital residence with approximate date of separation payoffs of $253,415 (Wells Fargo) and $35,000 (Gene Ruggiero).

[22.] Husband has had sole and exclusive possession of the marital home since separation.

[23.] Since the date of separation, Wife has made payments totaling $17,050.01 on the Ruggiero loan.

[24.] Since the date of separation, Husband has utilized $6,901.21 of marital funds to pay the taxes and mortgage on the marital residence.

[25.] Husband has not made any rental payments to Wife since the date of separation for his use of the residence.

[26.] Husband has reduced the mortgage obligation on the marital residence by more than $20,000. The payoff of the Wells Fargo mortgage on the marital residence as of August 2015 was $234,275.55.

[27.] The net equity of the marital residence as of date of separation was approximately $289,585. The net equity of the marital residence as of December of 2015 is similar because Husband's approximate pay down of the mortgage principal is equal to Porter's amended valuation.

[28.] The valuation assigned to the marital residence reflects that net equity.

[29.] Since separation, Husband has maintained all payments relative to the marital residence, including all mortgage payments to Wells Fargo.

[30.] Husband built the marital residence on the Goose Pond Road parcel which was originally acquired for $100,000.

[31.] The commercial property, located at Routes 6 & 590, 6 Roosevelt Drive, Palmyra Township, Hawley, Wayne County, Pennsylvania was appraised at $584,000 in February of 2013.

[32.] The property was appraised by Peter Porter, Hawley, Pennsylvania.

[33.] At the time of the hearing, Porter placed a reduced value on the commercial property due to problems with the roof. The value of the commercial property as of December of 2015 was $576,000.

[34.] The commercial property consists of three buildings: a residence, an office and a potential rental unit which now sits empty except for storage use by Wife.

[35.] The commercial property has a potential monthly rent of $4,000 per month; $2,500 for the office and $1,500 for the residence.

[36.] Wife has had exclusive use of the commercial property since date of separation.

[37.] Wife uses the commercial property as headquarters for her Century 21 real estate office.

[38.] The commercial property was originally acquired for $400,000 in 2007.

[39.] When the commercial property was acquired, the parties entered into a purchase money

mortgage with Wells Fargo, along with Wife's parents, the Gravinas.

[40.] The parties and the Gravinas originally both invested $40,000 each in the purchase of the commercial property.

[41.] When the Wells Fargo mortgage went into default on the commercial property, the parties purchased the interest in the Gravinas for $1.00 and a promise to eventually pay the Gravinas $20,000.

[42.] The Routes 6 & 590 commercial property was appraised at $391,300.00 in July of 2015 by Gerald Romanik, Hawley, Pennsylvania.

[43.] Romanik utilized three approaches in appraising the commercial property: the market date [sic] approach, cost approach and income analysis.

[44.] At the time the mortgage was satisfied, the commercial property had a fair market value of $600,000.00.

[45.] Husband's non-marital funds used to pay off the mortgage on the commercial property came from a loan against his brokerage account.

[46.] Wife has made payments in the amount of $6,200.00 toward payoff of Husband's loans.

[47.] In addition to the $6,200.00 paid by Wife, she has also made a $750.00 monthly payment or a total of $10,500.00 towards the margin loan interest since October of 2014.

[48.] Husband has failed to apply Wife's $750.00 monthly payment to the margin loan. Since the date of separation, Wife's total payments toward the margin loan are approximately $16,700.00.

[49.] After separation, Wife convinced Husband to take monies from his non-marital, pre-marital brokerage account and pay off the Wells Fargo mortgage on the commercial property.

[50.] Wife promised that she would repay Husband by virtue of a mortgage with an interest rate of 7%[.] [O]n or about May 13, 2011, Husband used $282,246 of his personal, non-marital, pre-marital funds, together with joint funds of $18,000 to pay off the Wells Fargo mortgage on the commercial property.

[51.] The mortgage payoff totaled $300,246 on or about May 13, 2011.

[52.] To accommodate the payoff, Husband took his pre-marital stocks and bonds of approximately $568,000 and deposited them in [the] FSC account.

[53.] Wife convinced Husband that in paying off the Wells Fargo mortgage on the commercial property, Husband would have better investment production.

[54.] Wife promised to secure Husband's payoff of the Wells Fargo mortgage with a mortgage on the $282,264 withdrawal from Husband's personal pre-marital account.

[55.] Despite the fact that the parties were separated at that time, Husband indicated that he "trusted" Wife and believed that she would reconcile the marriage and return to the marital residence.

[56.] Wife calculated that her payments to Husband on his loan of $282,264 would be $1,700.00 per month.

[57.] This agreement between the parties was never formalized and never reduced to a mortgage.

[58.] Wife paid only $7,880 toward this obligation through the end of 2011 and then stopped paying anything at all.

[59.] The $282,264 paid toward the Wells Fargo mortgage was purely from Husband's funds, having come from Husband's FSC brokerage account.

[60.] Through the time of the hearing, Husband had approximately $353,383 in carrying charges relative to the payoff of the mortgage on the commercial property against a loan on Husband's margin account.

[61.] Because of the payoff of the Wells Fargo mortgage on the commercial property, Husband "owes" his brokerage account $282,264 plus $55,811.09 in interest.

[62.] Prior to the payoff of the Wells Fargo mortgage, Husband also sold one of his bonds and paid $10,000 toward the marital Wells Fargo mortgage to protect the property from a mortgage foreclosure action.

[63.] Husband's original FSC account, which he transferred to Morgan Stanley, has only been in Husband's name and the assets primarily predated the marriage.

[64.] Previous to the divorce proceedings, the parties owned another commercial property in Greentown, Greene Township, Pike County, Pennsylvania.

[65.] That property was sold at a short sale on or about 2014. The principal mortgage on that property was discharged pursuant to a short sale agreement with Wells Fargo, but the balance on a line of credit secured against that property remains to be paid.

[66.] The balance of the Wells Fargo line of credit obligation at the time of the hearing was $58,446.00, with a per diem charge of $9,441[.]24.

[67.] An original attempt to sell that property fell through, however, and the $20,000.00 deposit was disbursed to Wells Fargo and Pike County Tax Claim Bureau; specifically, $12,029.30 to Wells Fargo and $3,843.00 and $4,127.00 to Pike County. Husband claims that Wife kept the $5,000.00 for contents sold by the parties.

[68.] To delay a threat of foreclosure on that property, Husband paid $10,000.00 to Wells Fargo prior to the short sale.

[69.] The Greentown commercial property was sold at short sale freeing the parties from the first mortgage on that property. The short sale agreement requires the parties to absorb that debt.

[70.] The Ruggiero mortgage resulted from an original $50,000.00 loan from Ruggiero to Wife to buy her franchise and/or sales commission obligations to Century 21.

[71.] At that time, Wife required approximately $75,000.00 to pay her outstanding obligations to Century 21.

[72.] Husband sold some of his stock and paid $25,000.00 to this obligation.

[73.] Husband claims that Wife is responsible for the $35,000.00 mortgage in favor of Ruggiero.

[74.] The parties previously divided savings and checking accounts by agreement.

[75.] The parties have agreed to equitably divide their vehicles.

[76.] Husband claims that he will be responsible for the Wells Fargo mortgage on the marital residence in the approximate amount of $253,415.00.

[77.] Husband claims that Wife is responsible for the Gravina obligation.

[78.] Husband claims that Wife is responsible to him for one half of the rental value of the Route 6 & 590 commercial property from January 2012 to date, 51 months at $2,000.00 per month for a total of $102,000.00.

[79.] Husband claims that Wife is responsible to him for his payoff of the Wells Fargo mortgage on the commercial property in the amount of $282,246.00 plus $55,811.09 in interest he paid on his margin loan over the past five years. This totals $338,057.09.

[80.] Husband's claims that Wife is responsible to him for one half of the deposit monies from the Greentown short sale, the $10,000.00 payment against that matter by Husband and the $10,000.00 payment against the parties' commercial property in Hawley.

[81.] Husband's previous FSC account, now identified as the Morgan Stanley account, is a non-marital asset. During the marriage, and to date of separation, that account appreciated in an approximate amount of $217,014.34. The parties agree on that figure.

[82.] Husband claims Wife should assume the MasterCard charge-off.

[83.] The parties agree to equally assume the $10,000.00 Gumble Bros. bill.

[84.] Wife's earning capacity was increased during the marriage as the result of first becoming a realtor and then becoming a broker.

[85.] At the time of the hearing, the parties are in similar, average to good health.

[86.] Husband will continue to run his construction business under the name W.D. Stevens, Inc. The company was started on or about 1988.

[87.] Wife will continue to run her Century 21 Select real estate business. The business was started in 1993 and expanded on or about 2010 when Wife received her brokerage license.

[88.] The parties stand relatively equal regarding the general criteria for equitable distribution.

[89.] The parties have no life insurance but have health insurance.

[90.] The parties have agreed that the marriage is irretrievably broken and have submitted the required affidavits and waivers of notice of entry of decree in divorce. The same have been tendered to the Master at the time of the hearing.

[91.] Husband claims the tax lien against G&S Enterprise is an obligation of Wife.

[92.] There is no supportable claim from either party for counsel fees.

[93.] There is no supportable claim for either party for alimony.

[94.] In addition to the liabilities addressed above, the parties also accumulated the following debts:

a) Credit card debit [sic] in Husband's name $24,000.00

b) Credit card debt in Wife's name $10,000.00

> > c)    The Gravina loan in the amount of
> >        $20,000.00

Report and recommendation of divorce master, 6/14/16 at 2-7.

Following the findings of fact in the master's June 14, 2016 report and recommendation, the master set forth her equitable distribution recommendation. Both parties filed exceptions to the June 14, 2016 master's report and recommendation. In response, the trial court entered an order remanding the case to the master for a rehearing to consider all enumerated factors under 23 Pa.C.S.A. § 3502(a) of the Divorce Code relevant to the equitable division of the marital property and directing the master to comply with Pa.R.Civ.P. 1920.54(c).[1]  (Order of court, 10/11/16.)

On remand, the master did not take additional testimony. Rather, she submitted a revised report and recommendation that set forth the considered enumerated factors under Section 3502 and complied with Rule 1920.54(c). (Report and recommendation of divorce master, 11/17/17.)  The master recommended that a divorce be granted and that any request for alimony, counsel fees, costs, and expenses be denied. (*Id.* at 4, ¶¶ 1-3.)  The master also made the following equitable distribution recommendation:

> > 4.    Wife shall be deeded the Routes 6 & 590
> >       commercial property and shall assume full and
> >       complete liability and responsibility for the
> >       premises.

---

[1] Rule 1920.54(c) requires the master's report to contain a separate section captioned "Division of Property" and divided into two parts that list marital property and non-marital property.  Pa.R.Civ.P. 1925.54(c).

5.    ASSETS

| Husband | | Wife | |
|---|---|---|---|
| Marital Home | 538,000.00 | Commercial properties | 576,000.00 |
| W.D. Stevens, Inc. | 25,000.00 | 50% Increase in Brokerage | |
| 50% increase in | | Acct. | 108,507.00 |
| Brokerage Acct. | 108,507.00 | Century 21 Select franchise | 25,000.00 |
| | $671,507.00 | | $708,707.00 |

DEBTS

| Husband | | Wife | |
|---|---|---|---|
| Mortgage on marital residence | 253,415.00 | Gravina loan | 20,000.00 |
| Loan from Brokerage acct. | 141,000.00 | Ruggiero mortgage | 35,000.00 |
| Greentown Line of Credit | 29,223.00 | Greentown Line of Credit | 29,223.00 |
| | | Loan from Brokerage acct. | 141,000.00 |
| | | Payment for Greentown taxes | 10,000.00 |
| | $423,638.00 | | $235,223.00 |

Wife shall reimburse Husband $55,016.00:

|  | | |
|---|---|---|
| | $ 29,223.00 | Greentown Line of Credit |
| | $ 141,000.00 | loan from Husband's brokerage account |
| | $ 10,000.00 | payment made by Husband for Greentown taxes |
| | $ 180,223.00 | |
| less | $ 108,507.00 | one-half of the post-marriage, pre-separation appreciated value of Husband's brokerage account |
| less | $ 16,700.00 | Wife's payments toward commercial loan |
| | $ 55,016.00 | |

6.    Wife will make payments to Husband in the amount of $1,700.00 monthly at 7% until the amount of $55,016.00 is paid in full. Wife may refinance the loan and pay it off sooner without penalty.

7.    Wife shall reimburse Husband for the $10,000.00 Husband paid to keep the Greentown property from sheriff's sale.

8.    Wife shall assume responsibility of $29,223.00, half of the outstanding Greentown Line of Credit.

9. Wife shall assume the Ruggiero mortgage of $35,000.00 as her sole responsibility.

10. Wife shall assume the Gravina $20,000.00 loan.

11. Husband shall assume responsibility of $29,223.00, half of the outstanding Greentown Line of Credit.

12. Husband is not entitled to carrying fees and interest on the margin loan or Wells Fargo loan.

13. Husband shall be deeded the marital residence and shall assume full and complete liability and responsibility of the Wells Fargo mortgage.

14. The parties shall divide the vehicles as stipulated.

15. The parties shall divide any personal property as stipulated.

16. Wife shall retain her Century 21 Select franchise and real estate business.

17. Husband shall retain W.D. Stevens, Inc., his construction business.

18. Neither party shall be entitled to any rental credits of set-offs relative to their current residences.

19. Each party is to assume any and all debt and/or other liabilities which are in their respective names not addressed in this recommendation, including their credit cards.

20. Each party will cooperate in the transferring of any titles, deeds, or legal documentation so a transfer can be successfully effectuated. Any transfer fees to effectuate any transaction will be equally shared by the parties.

> 21. Any fees beyond the initial Master's $500.00 fee shall be divided equally between Husband and Wife.

Report and recommendation of divorce master, 11/17/17 at 5-6.

The record reflects that Husband and Wife both filed exceptions to the November 17, 2017 master's report and recommendation. By order entered on May 2, 2018, the trial court denied all exceptions. On May 21, 2018, Wife filed a notice of appeal of the trial court's May 2, 2018 order denying exceptions to this court at No. 1542 EDA 2018. On May 31, 2018, Husband then filed a notice of appeal of the same order to this court at No. 1626 EDA 2018.[2]

On June 15, 2018, this court entered an order directing Wife to show cause within ten days as to the finality and appealability of the May 2, 2018 order because, even though the parties' economic claims had been resolved, a divorce decree had not yet been entered. On June 21, 2018, this court entered an order directing Husband to show cause within 10 days as to the finality and appealability of the May 2, 2018 order with respect to his cross-appeal. On June 29, 2018, this court quashed the appeal docketed at

---

[2] On May 21, 2018, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife filed her Rule 1925(b) statement on June 12, 2018. On June 6, 2018, the trial court ordered Husband to file a Rule 1925(b) statement. Husband filed his statement on June 15, 2018. On August 28, 2018, the trial court filed two separate "statement of reasons." One "statement of reasons" addressed Wife's Rule 1925(b) issues, and one "statement of reasons" addressed Husband's Rule 1925(b) issues.

No. 1626 EDA 2018. On July 2, 2018, counsel for both parties filed with this court correspondence and a copy of their joint praecipe to enter final decree in divorce court that they filed on June 26, 2018 with the Wayne County Prothonotary. The docket entries reflect that the trial court entered the divorce decree on June 26, 2018. By order entered July 12, 2018, this court reinstated the appeal at No. 1626 EDA 2018. On July 13, 2018, this court discharged the rule to show cause at No. 1542 EDA 2018.[3] Therefore, these consolidated cross-appeals are now ripe for our review.

Wife raises the following issues:

> [1.] Did the Honorable Trial Court err and abuse its discretion in the overall equitable distribution scheme when it failed to take into consideration the economic circumstances of the parties at the time of the Master's Hearing and Argument, specifically, Husband's access to a sizeable brokerage account and family trust?
>
> [2.] Did the Honorable Trial Court err and abuse its Discretion by adopting the appraisal conducted by Peter Porter of the marital residence when the wrong square footage was used and the value of the home was reduced by the entire replacement cost of the roof and furnace?
>
> [3.] Did the Honorable Trial Court err and abuse its discretion by adopting the appraisal conducted

---

[3] The record reflects that on July 11, 2018, Wife filed a notice of appeal of the divorce decree at No. 2070 EDA 2018, and on July 13, 2018 Husband filed a notice of appeal of the divorce decree at No. 2071 EDA 2018. On August 13, 2018, Husband and Wife filed a joint motion to consolidate the appeals at Nos. 1542 and 1626 EDA 2018 with the appeals of the divorce decree at Nos. 2070 and 2071 EDA 2018. This court dismissed the cross-appeals at Nos. 2070 and 2071 EDA 2018 as duplicative and denied the joint motion for consolidation as moot.

by Peter Porter of the commercial property when Mr. Porter is not a certified commercial appraiser and failed to utilize the income approach?

[4.] Did the Honorable Trial Court err and abuse its discretion in finding that there was clear and convincing evidence that Husband did not intend the mortgage payoff of the commercial property to be a gift but rather a loan to Wife when the payoff was substantially less than the appraised fair market value of the property?

[5.] Did the Honorable Trial Court err and abuse its discretion in requiring Wife to make payments to Husband in the amount of $1.700.00 monthly at 7% interest when the current interest rate is substantially lower?

Wife's brief at 3-5.

Husband raises the following issues:

1. Whether the Trial Court erred as a matter of law and/or abused its discretion in failing to award Husband the monies Husband paid to satisfy the mortgage on the parties' commercial property and the ongoing carrying charges to do so?

2. Whether the Trial Court erred as a matter of law and/or abused its discretion in failing to award Husband rental payments for the parties' commercial property?

3. Whether the Trial Court erred as a matter of law and/or abused its discretion in entering an Order imposing an improper and discriminate equitable distribution award?

Husband's brief at 5.

The parties' claims involve equitable distribution. A trial court has broad discretion when fashioning an award of equitable distribution. ***Dalrymple v.***

***Kilishek***, 920 A.2d 1275, 1280 (Pa.Super. 2007). Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Smith v. Smith***, 904 A.2d 15, 19 (Pa.Super. 2006) (citation omitted). We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. ***Id.*** This court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Wang v. Feng***, 888 A.2d 882, 887 (Pa.Super. 2005). In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. ***Id.*** "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa.Super. 2005) (citation omitted).

> Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

***Childress v. Bogosian***, 12 A.3d 448, 445-446 (Pa.Super. 2011) (quotation marks and internal citations omitted).

Wife first complains that the trial court erred in adopting the master's recommendation with respect to the overall equitable distribution scheme because the master failed to consider the economic circumstances of each party; specifically, Husband's access to a non-marital brokerage account.[4] The record belies Wife's claim.

When considering the factors set forth in the Divorce Code regarding equitable division of marital property, the master addressed Factor 10, which is the "economic circumstances of each party at the time the division of property is to become effective." 23 Pa.C.S.A. § 3502(a)(10). The master concluded that:

> [Husband and Wife] had substantial assets but also had substantial debt. The parties have good businesses and a stream of income to sustain them.
>
> Husband has a pre-marital account with Morgan Stanley. At the time of the hearing, this account had an approximate value of $404,217.21.

Report and recommendation of divorce master, 11/17/17 at 3. Because the record clearly demonstrates that the master considered the economic

---

[4] We note that although Wife's question presented on this issue includes a reference to Husband's family trust, Wife's argument on this issue makes no reference to Husband's family trust.

circumstances of the parties, including Husband's non-marital brokerage account, this claim lacks merit.[5]

Wife next complains that the trial court erred in adopting Peter Porter's appraisal of the marital residence because he used the incorrect square footage and reduced the home's value by the full replacement cost of the roof and furnace.

The record reflects that Mr. Porter, Husband's expert, calculated that the parties' marital residence consisted of 3,900 square feet of usable living space. (Notes of testimony, 12/16/15 afternoon session at 118.) In arriving at this calculation, Mr. Porter did not include the square footage of the unfinished basement and the attic. (*Id.* at 119.) The record further reflects that Mr. Porter testified that the most recent re-inspection of the residence "showed evidence of failure of the roof shingles." (Notes of testimony, 12/16/15 morning session at 10.) Additionally, Mr. Porter "was informed by the owner that one of the boilers or furnace had also failed, need to be replaced." (*Id.* at 11.) Mr. Porter testified that the shingle and furnace failures would diminish the value of the residence "in the range of Thirty Five to Forty Thousand," resulting in an appraised value of $538,000. (*Id.* at

_____

[5] We note that in her argument on this issue, Wife further complains that the master's equitable distribution scheme failed to promote economic justice because the master used a deflated value for the marital residence, which was ultimately awarded to Husband, and an inflated value for the Routes 6 & 590 commercial property, which was ultimately awarded to Wife. Wife raises these claims in her Issue Nos. 2 and 3, and we dispose of them in our discussion of those issues.

11-12.) Mr. Porter arrived at the replacement costs by obtaining estimates from a building contractor. (*Id.* at 40.)

Gerald Romanich,[6] Wife's expert, testified that he appraised the home based on 5,312 square feet. (Notes of testimony, 12/16/15 afternoon session at 5.) When asked where he got that figure from, Mr. Romanich responded that "I got that number from [Wife.]" (*Id.*) Mr. Romanich further testified that he would not have reduced the value of the home for the full replacement costs of the roof and furnace because "[c]ost is not synonymous with value." (*Id.* at 9.) As such, Mr. Romanich would have reduced the value of the home by 50 percent of the replacement costs. (*Id.* at 9-10.) Mr. Romanich's appraised value of the home was $771,600. (*Id.* at 5.)

The trial court adopted the master's recommendation that Mr. Porter's appraised value be assigned to the marital residence, which appraised value is supported by the evidence. Because it was in the province of the trial court to weigh the evidence and decide the credibility of the parties' experts, we will not reverse the determination.

Wife next complains that the trial court erred in adopting Mr. Porter's appraisal of the Routes 6 and 590 commercial property ("commercial property") for three reasons. First, Wife contends that Mr. Porter's appraisal "contradict[s]" the master's finding of fact that the

---

[6] We note that the record contains conflicts with respect to the correct spelling of Wife's expert's surname. We will utilize "Romanich" throughout this memorandum.

"commercial property was appraised at $391,300.00 in July of 2015 by Gerald [Romanich], Hawley, Pennsylvania." (Wife's brief at 20.) To the extent that Wife claims that this finding of fact precluded the trial court from adopting the master's recommendation that Mr. Porter's appraisal of the commercial property be used, Wife is mistaken. This finding of fact merely set forth Mr. Romanich's appraised value of the commercial property, just as another finding of fact set forth Mr. Porter's appraised value of the commercial property.[7] Therefore, this claim lacks merit.

In her second and final assignments of error on this claim, Wife contends that the trial court erred in adopting Mr. Porter's valuation because he is not certified as a commercial appraiser and he failed to use the income approach to value the property. (Wife's brief at 20-21.) Wife cites to no authority – and we are aware of none – for her seeming proposition that a commercial valuation must be performed by a commercial appraiser who must use the income approach to valuation. Rather, Wife merely attacks Mr. Porter's credibility. Once again, because the record supports Mr. Porter's valuation, it was for the trial court to decide his credibility, and we will not reverse that determination.

---

[7] We note that the June 14, 2016 report and recommendation of divorce master employs an incorrect numbering sequence. In that report, Mr. Romanich's appraised value of the commercial property is set forth on page 4 at paragraph 36. Mr. Porter's appraised value of the commercial property is set forth on page 4 at paragraph 26.

Wife next complains that the trial court erred in finding that there was clear and convincing evidence that Husband's mortgage payoff on the commercial property was a loan to Wife, as opposed to a gift.

In her argument on this issue, Wife relies on **Biese v. Biese**, 979 A.2d 892 (Pa.Super. 2009). Wife's reliance, however, is misplaced. In **Biese**, this court reiterated the rule that where a spouse places separate property in joint names, the law presumes a gift to the entireties absent clear and convincing evidence to the contrary. **Id.** at 896 (citation omitted). Here, Wife does not allege that Husband placed separate property in joint names; rather, Wife alleges that Husband used separate property to pay off a mortgage on property that was owned by Husband, Wife, and Wife's parents. (Wife's brief at 22.) Therefore, **Biese** has no application.

Wife also contends that the payments she made to Husband were not payments toward any loan obligation she had to him, but were merely her contributions to marital debt. (**Id.** at 24.) Although the record reflects that Wife testified that she never entered into mortgage loan agreement with Husband, it also reflects that Husband testified that the parties agreed that Wife would pay a mortgage to Husband. (Notes of testimony, 12/16/15 at 97-98, 130.) Clearly, the parties' testimony conflicted. Once again, then, it was for the trial court to decide credibility, and we will not reverse that determination on appeal.

Wife finally complains that the trial court erred when it required her to pay her debt to husband by making monthly payments of $1,700 at a 7 percent interest because the current interest rate is 4 percent and "the interest rate must be in line with current rates." (Wife's brief at 25-26.) The record, however, reflects that Husband testified that the parties agreed that Husband would hold the mortgage and wife would pay 7%." (Notes of testimony, 9/9/15 at 66.) Because the record supports the determination, we will not disturb it on appeal.

Having disposed of Wife's issues, we now address Husband's complaints. In his first assignment of error, Husband contends that the trial court erred or abused its discretion by not awarding him the monies he paid to satisfy the mortgage on the commercial property, together with carrying charges. Husband's argument on this issue contains excerpts from testimony regarding Wife's promise to pay back the loan and pay "whatever [she] could toward the margin interest." (Husband's brief at 17.) Husband sets forth no meaningful legal argument to support his claim that the trial court erred or abused its discretion. As we have explained,

> [w]hen briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. We will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful appellate

> review, we may dismiss the appeal entirely or find certain issues to be waived.

***In re R.D.***, 44 A.3d 657, 674 (Pa.Super. 2012) (internal citations and quotation marks omitted); ***see also*** Pa.R.A.P. 2119.

Husband's failure to sufficiently develop his legal argument on this issue impedes our ability to conduct meaningful appellate review. Therefore, Husband waives this issue on appeal.

Husband next complains that the trial court erred "and/or abused its discretion in failing to award him rental payments for Wife's use of the commercial property." (***Id.*** at 18.) Husband's three-sentence argument on this issue renders this claim incapable of meaningful appellate review. Therefore, Husband waives this issue on appeal.

Finally, Husband claims that the trial court erred and/or abused its discretion by imposing an "improper and discriminate equitable distribution award; specifically, that Wife is "effectively being given 66% of the assets," which is an injustice. (Husband's brief at 19-20.) Husband failed to raise this issue in his exceptions to the master's report.[8] Therefore, Husband waives

---

[8] We also note that Husband failed to raise this issue in his Rule 1925(b) statement, and the trial court did not address it in its "statement of reasons" pertaining to Husband.

the issue on appeal.[9]  **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/20/19

---

[9] We further note that even if Husband had preserved this issue with the trial court, it would be waived for failure to advance a legal argument capable of meaningful appellate review.  **See** Pa.R.A.P. 2101.  In his brief on this issue, Husband expresses his dissatisfaction with the equitable distribution scheme, rehashes what occurred below, identifies what he perceives as inequities, and offers suggestions as to how this court could correct those perceived inequities.  Husband fails, however, to set forth a cogent legal argument that supports a finding of error or an abuse of discretion.