J-S73013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TERRY STRAUSSER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTEN STRAUSSER | : | |
| | : | |
| Appellant | : | No. 1180 MDA 2019 |

Appeal from the Order Entered May 28, 2019
In the Court of Common Pleas of Columbia County Civil Division at
No(s): 2011-CV-1385-DV

BEFORE: SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.: **FILED APRIL 07, 2020**

Kristen Strausser ("Wife") appeals *pro se* from the May 28, 2019 order of the Columbia County Court of Common Pleas in this protracted divorce matter initiated by Terry Strausser ("Husband"), effecting the equitable distribution of the parties' marital estate. We affirm.

Preliminarily, we note that we previously addressed the facial untimely filing of the notice of appeal and concluded that the notice of appeal, filed by Wife on July 17, 2019, within thirty days of July 2, 2019, was timely. ***See Strausser v. Strausser***, 2020 WL 406850, 1180 MDA 2019 (Pa. Super. filed January 24, 2020).

The factual and procedural history of this case reveals that Husband filed a complaint in divorce in 2011 and an amended complaint in 2014. Master's Report, 2/6/19, at 1. Wife had been incarcerated at SCI Cambridge Springs

in Crawford County, Pennsylvania, beginning in January of 2011, upon an aggregated seventeen-to-thirty-four-year sentence for arson and attempted murder. N.T., 12/4/18, at 7.[1] At that time, two daughters born of the marriage, in 2002 and 2003, resided with Husband, as did Wife's daughter from a prior relationship. *Id.* at 10; *K.L.S. v. T.L.S.*,[2] 121 A.3d 1133, 1651 MDA 2013 (Pa. Super. filed April 15, 2015) (unpublished memorandum at 1) (addressing custody). The parties and maternal grandparents also litigated custody issues beginning in 2011. *K.L.S.*, 1651 MDA 2013 (unpublished memorandum at 1–3). The custody court, also the trial court herein, granted Father legal and primary physical custody and the maternal grandparents partial physical custody. *Id.* at 3. This Court ultimately reversed Judge James's *sua sponte* denial of visitation to Wife. *Id.* at 16.

Instantly, on April 17, 2015, the trial court herein entered an order authorizing bifurcation of the divorce from economic issues and directing Husband to schedule all unresolved equitable distribution issues before a Master by June 1, 2015. Order, 4/17/15. The trial court granted a bifurcated decree in divorce on May 8, 2015.

---

[1] *Commonwealth v. Strausser*, 64 A.3d 269, 709 MDA 2011 (Pa. Super. filed January 3, 2013) (unpublished memorandum); *Commonwealth v. Strausser*, 153 A.3d 1116, 1840 MDA 2015 (Pa. Super. filed June 22, 2016) (unpublished memorandum). The Honorable Thomas A. James, Jr., the trial court herein, also presided over Wife's criminal trial.

[2] Columbia County Court of Common Pleas Docket Number 934 of 2011.

Nothing further occurred in the case until Wife filed a petition on May 23, 2018, relating to Husband's failure to schedule a Master's Hearing by June 1, 2015, as had been ordered by the court in April of 2015. On June 5, 2018, the trial court, *inter alia*, referred the case to a Master, directing that the "matter should move along expeditiously in light of the delay." Order, 6/5/18. A hearing before a Master occurred on December 4, 2018. Following entry of the Master's Report ("Report") to the court on February 6, 2019, Wife filed exceptions to the Report on March 28, 2019.[3] On May 28, 2019, the trial court denied Wife's exceptions. Order, 5/28/19.

Wife filed a notice of appeal, and both Wife and the trial court complied with Pa.R.A.P. 1925. On January 24, 2020, we remanded this case to the trial court for preparation of a Supplemental Opinion within thirty days. ***Strausser***, 2020 WL 406850, 1180 MDA 2019. The trial court complied, and the matter is now ripe for review.

In her brief on appeal, Wife raises twenty-six issues as follows:

1. [Wife] argues that Judge Thomas A. James violated PA Rules of Judicial Conduct 2.7, when he decided the order of the court dated May 28, 2019. Judge James had recused himself from all of [Wife's] legal matters in the order dated May 29, 2015.

2. Judge James improperly granted Bifurcation for the following reasons:

---

[3] Wife requested and received an extension of time to file exceptions. Order, 3/25/19. Additionally, without explanation in the record, the Honorable Gary E. Norton recused himself from the case. Order, 3/22/19.

a. [Husband] failed to notify [Wife] of motion for bifurcation in timeframe required by law.

b. [Wife] did not receive notice of appointed counsel (4-16-2015) until day after the bifurcation hearing (4-15-2015).

c. Judge granted bifurcation without protecting [Wife's] economic claims.

d. [Husband] failed to send settlement agreement indicated by the Judge in transcripts or arrange a Special Master's Conference by June 1, 2015. Judge James should have found [Husband] in Contempt of Court when [Wife] petitioned for such.

3. Attorney Anthony J. McDonald failed to serve brief to the [Wife] before argument/hearing on May 28, 2019.

4. The Court failed to serve [Wife] a copy of Final order Dated May 28, 2019 until July 9, 2019.

5. [Husband] failed to provide updated property assessment making the value of marital property appear less than the current value. Well established precedent states that property value is to be determined at the date closest to the date of distribution.

6. No documentation or independent assessment of vehicles [sic] value. Court relied on [Husband's] opinion.

7. All personal property belonging to the [Wife] remained in the marital home at the time of her departure; thus making the [Husband] responsible for the destruction and/or disposal of said property. [Wife] made numerous attempts through prior counsel, letter, and family to obtain her property throughout the years with [Husband] denying access every time.

8. [Husband] has provided no proof of current mortgages or unsecured debt.

9. [Husband] did not provide discovery as approved by the court, therefore [Wife] could not provide income or 401K data.

10. When a home is refinanced during a marriage it becomes marital property. [Husband] has failed to supply any signed

documentation of [Wife's] "alleged" relinquishment of Joint ownership of marital residence.

11. Child custody and support are not to be considered in equitable distribution.

12. [Husband] did not have custody of [Wife's] child from a previous relationship (Alyssa Yoder) as she resided with her paternal grandmother, Kathy Yoder, until after the age of eighteen years.

13. Land was not a gift to the [Husband] it was purchased after the marriage for $8,000.00 which [Husband] testified to during special master[']s conference. Value of the land is to be determined at the date of distribution, which is approximately $55,000.00 per acre.

14. [Wife] filed pretrial statement with inventory and request for discovery on June 25, 2018.

15. Judge James is biased in favor of [Husband] in both the child custody and divorce cases. Seven counts in [Wife's] criminal case, that Judge James presided over, were overturned on appeal due to being illegal charges/convictions.

16. In light of Judge James' unsubstantiated estimate that a 50/50 split would result in a $6,000.00 settlement, [Wife's] agreement at the 2015 bifurcation hearing to accept $4,000.00 is extremely reasonable. This amount did not even consider the [Wife's] personal property that the [Husband] has since disposed of.

17. Court has refused to provide [Wife] with transcripts to any divorce related proceedings despite numerous requests throughout the years, inhibiting [Wife's] ability to appeal.

18. [Wife] argues that despite Judge James' claim that [Husband] has taken responsibility for all marital debt, the following marital debt remains unaddressed...[W]ife's student loans, legal fees (Attorney Lewis), medical bills, and credit cards.

19. Court fails to consider Wife's poor health and lack of future employability.

20. [Wife] excepts to the misinformed assumption by Special Master Dennehy that "all of wife's housing, food, and medical care are all being provided for by the Commonwealth of Pennsylvania."

21. 2010 Federal Tax Return was not addressed by court.

22. Judge James did not address work history or future employability of [Husband] and/or [Wife].

23. Court failed to take into consideration the Wife's Contributions brought to the home from prior to the marriage.

24. Court failed to consider [W]ife's contribution to the marriage through her status as full-time homemaker and child caretaker throughout the marriage.

25. Court fails to address [Husband's] possession of [Wife's] State Child Support Access Card which contained approximately $600.00 in arrearages owed to [Wife] for the Support of Alyssa Yoder from her biological father, Jeffery Yoder.

26. Court fails to address [Husband's] possession of [Wife's] Driver's License, Social Security Card, Birth Certificate, Psychological and medical documents, School records, Legal documents, EMT Certifications, children's birth and school records, Photographs, etc.

Wife's Brief at 5–6.

Our standard in reviewing equitable distribution awards is settled:

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.

*McCoy v. McCoy*, 888 A.2d 906, 908 (Pa. Super.2005) (internal quotations omitted). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa. Super.2005).

*Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super.2006).

> "The Divorce Code does not specify a particular method of valuing assets." Thus, "the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." . . . "A trial court does not abuse its discretion in adopting the only valuation submitted by the parties."

*Childress v. Bogosian*, 12 A.3d 448, 456 (Pa. Super. 2011) (internal citations omitted). Moreover, "the trial court has the authority to divide the award as the equities presented in the particular case may require." *Busse v. Busse*, 921 A.2d 1248, 1260 (Pa. Super. 2007).

The first issue Wife raises states as follows: "[Wife] argues that Judge Thomas A. James violated PA Rules of Judicial Conduct 2.7, when he decided the order of the court dated May 28, 2019. Judge James had recused himself from all of [Wife's] legal matters in the order dated May 29, 2015." Wife's Brief at 5.

Our review of the record, including the docketing statements supplied, reveals that Wife's criminal litigation and the parties' custody and divorce litigation all were occurring and ongoing in 2011. In the custody case[4] referenced *supra*, Judge James filed the following order:

---

[4] This Court may take "judicial notice of other proceedings involving the same parties." *Hvizdak v. Linn*, 190 A.3d 1213, 1218 n.1 (Pa. Super. 2018) (citing *Estate of Schulz*, 139 A.2d 560, 563 (Pa. 1958)).

AND NOW, to wit, this 29th day of May, 2015, after consideration of "[Wife's] Petition for Disqualification (Recusal) of Judge," **the [c]ourt finds the petition to be meritless**. This [c]ourt has been sensitive to the custody case and has attempted to issue Orders and mediate matters in the best interest of the children. As to [Wife's] allegations of the Administrative Assistant working for former Defense counsel, the [c]ourt had no recollection and/or knowledge of the same until the filing of this petition. In fact, the [c]ourt has never spoken to the Administrative Assistant concerning the background of [Wife] during her aforesaid criminal case. However, in light of the circumstances and what would be appearances in this case, the [c]ourt hereby on its own recuses itself from the Domestic Relations cases and from the PCRA case.

Order, Columbia County Court of Common Pleas Docket Number 934 of 2011, 6/1/15 (emphasis added); Wife's Brief at B-1, B-2. Because Judge James initially did not recall this order in his Pa.R.A.P. 1925(a) opinion, we remanded for the trial court to provide a supplemental opinion, and the trial court has complied.

We are satisfied with the explanation provided by the trial court.[5] The trial court has noted that the reference in its June 1, 2015 order regarding recusal related to the support case. Supplemental Opinion, 2/18/20, at 2. More importantly, in the four plus years since that order was entered, Wife did not reference recusal until she filed her Pa.R.A.P. 1925(b) statement, despite the fact that this trial court ruled upon many issues in the custody case **and** the instant case. Pa.R.A.P. 1925(a), 9/4/19, at 1 n.1. Finally, "there

_____

[5] At various times throughout the period, this trial court was the only judge in the county. Supplemental Opinion, 2/18/20, at 4 n.2.

was no recusal notation or order in [the] divorce file." Supplemental Opinion, 2/18/20, at 3. Therefore, in light of the trial court's Supplemental Opinion, we conclude the issue lacks merit.

Initially, we observe that issues 2, 3, 6, 14, 16, and 25 are waived because they were not included in the exceptions filed by Wife. Wife sought, and was granted, an extension of thirty days to file exceptions. Motion for Extension of Time to File Exceptions, 3/13/19; Order, 3/25/19. Pennsylvania Rule of Civil Procedure 1920.55–2(b) states, in relevant part, "Matters not covered by exceptions [to the master's report and recommendation] are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters." As our Court has previously explained, "This rule requires a party who is dissatisfied with a master's report to file exceptions to the report, or waive any such objections." *Lawson v. Lawson*, 940 A.2d 444, 450 (Pa. Super. 2007).

Issues 4 and 17 are moot. Regarding the timeliness of this appeal raised in issue 4, we noted *supra* that we previously held the instant appeal is timely. *Strausser*, 2020 WL 406850, 1180 MDA 2019. Regarding issue 17, Wife's claim that she has not been given transcripts is belied by her references to notes of testimony in her appellate brief. *See* Wife's Brief at 11, 14, 16, 18, 19, 20, 22, 23.

We addressed issue 15, relating to alleged trial court bias, *supra*. Moreover, the claims in issues 15, 11, 12, and 25 relate to the parties'

custody/support litigation, and thus, are not before us.[6]  Regarding issue 20,

Wife fails to cite any support for her claim; thus the issue is waived.  ***In re***

***M.Z.T.M.W.***, 163 A.3d 462 (Pa. Super. 2017) (failure to cite relevant authority

results in waiver).  Even if not waived, we would discern no abuse of discretion

by the trial court's reference to Wife's daily needs being met by the

Commonwealth of Pennsylvania during her incarceration.

Thus, issues 5, 7–10, 13, and 18–24, 26 are before us.  Husband asserts

that because Wife failed to file a pretrial statement as require by Pa.R.C.P.

1920.33, all issues are waived.  Husband's Brief at 19.  The rule states, in

pertinent part:

> **Rule 1920.33. Joinder of Related Claims. Equitable Division. Enforcement**
>
> (a) If a pleading or petition raises a claim for equitable division of marital property under Section 3502 of the Divorce Code, the parties shall file and serve on the other party an inventory. . . .
>
> (b) Within the time required by order of court or written directive of the master or, if none, at least 60 days before the scheduled hearing on the claim for equitable division, the parties shall file and serve upon the other party a pre-trial statement.
>
> \* \* \*
>
> (d)(1) A party who fails to comply with a requirement of subdivision (b) may be barred from offering testimony or introducing evidence in support of or in opposition to claims for the matters omitted.

---

[6]  Contrary to Wife's claims in issues 11 and 12, the trial court did not make findings regarding custody or support, it merely noted observations regarding the equities.  Trial Court Opinion, 9/4/19, at 2–3.

Pa.R.C.P. 1920.33(b), (d). "It is clear that the rule implicates a filing and inventory of *all marital property by both parties* . . . ." **Anderson v. Anderson**, 822 A.2d 824, 829 (Pa. Super. 2003) (emphasis in original).

On June 5, 2018, the trial court authorized Wife to proceed *in forma pauperis*. Order, 6/5/18, at unnumbered 1. Additionally, the court directed the parties to file "inventories, appraisements and income and expense statements within thirty days . . . ." **Id.** at unnumbered 2. Husband filed his pretrial statement in July of 2018. N.T., 12/4/18, at 12. The record reflects that Wife did not comply. Moreover, at the Master's hearing, Husband additionally filed thirteen exhibits, as follows:

[Husband's] Exhibit 1   Inventory and Appraisement

[Husband's] Exhibit 2   Income and Expense Statement

[Husband's] Exhibit 3   Complaint in Divorce

[Husband's] Exhibit 4   Counter-Affidavit

[Husband's] Exhibit 5   Bifurcated Decree in Divorce and Order retaining jurisdiction of economic issues

[Husband's] Exhibit 6   Order of Court dated June 1, 2018

[Husband's] Exhibit 7   Letter from AgChoice Farm Credit regarding "Waiver of Marital Rights"

[Husband's] Exhibit 8   Appraisal of Property at 246 Mordansville Road, Bloomsburg, Pennsylvania

[Husband's] Exhibit 9   Deed and Mortgage for Real Property

[Husband's] Exhibit 10 AgChoice Farm Credit Mortgage on Mordansville Road Property

[Husband's] Exhibit 11 Mortgage of Mordansville Road Property designating MERS as AgChoice Nominee

[Husband's] Exhibit 12 Satisfaction of AgChoice Mortgage

[Husband's] Exhibit 13 Pre-Hearing Statement of [Husband]

Master Report to the Court, 2/6/19, at 2–3; N.T., 12/4/18, at 48. Wife did not present any documents. N.T., 12/4/18, at 2. We agree with Husband's assessment, as the remaining issues would have required submission of documentation by Wife, and none was forthcoming. In the absence of a pretrial statement by Wife, Wife is "barred from offering testimony or introducing evidence in support of or in opposition to claims for the matters omitted." Pa.R.C.P. 1920.33 (d).

Moreover, Wife's complaints encompassed in the remaining issues[7] lack any supporting documents from Wife. As we noted *supra*, "Where the evidence offered by one party is uncontradicted, **the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented**." ***Childress***, 12 A.3d at 456 (emphasis added); ***see also Smith v. Smith***, 653 A.2d 1259, 1267 (Pa. Super. 1995) (stating if one party disagrees with other party's valuation, it is objectant's burden to provide court with alternative valuation). "A trial court does not abuse its discretion in adopting the only

_____

[7] Those complaints involve the marital residence, property therein, Wife's health, the parties' future employability, prior tax liability, and marital debt, as identified in issues 5, 7, 8, 10, 13, 18, 19, and 21–24.

J-S73013-19

valuation submitted by the parties." ***Childress***, 12 A.3d at 456 (citing ***Biese v. Biese***, 979 A.2d 892, 897 (Pa. Super. 2009)).

Issues 9 and 26 are belied by the record. Regarding issue 9, relating to Husband's 401K, Wife testified at the Master's hearing, "I just want to say I'm not trying to touch [Husband's] 401k [account] . . . . I just want this to be done. That's it." N.T., 12/4/18, at 53. Regarding issue 26, Wife's items allegedly in Husband's possession, Wife clarified, "If my personal belongings are gone, I can't recover that." ***Id.*** In response to the Master's inquiry whether Wife was seeking "any sort of personal stuff," Wife responded, "My grandmother's dishes. Other than that, no." ***Id.*** The Master directed Husband's counsel to arrange to have them returned to Wife's parents. ***Id.***

We close noting our agreement with the trial court's observations:

> The thrust of the total of [Wife's] complaints are that the master's decision and the court's concurrence were not equitable and fair. Despite all of her complaints, [Wife] was able to participate in the master's hearing despite serving 17-34 years in a State Correctional Facility. Moreover, this was essentially an insolvent marital estate. The Master noted on page 8 of his report that "as a practical matter, considering the limited amount of marital property in this matter, this marital estate was actually insolvent on the date of separation, and Husband has assumed sole responsibility of payment of debts. In addition, while Husband has a significant amount of non-marital equity in the form of the equity in the marital residence, the marital debts plus the debts on the residence are nearly equal to the value of the residence." (Master's Report p. 8).
>
> In the order denying exceptions, this court summarized the reasons for adopting the [M]aster's recommendations:
>
>> [Wife] has filed a litany of exceptions. Most are irrelevant and immaterial. The court accepts the

- 13 -

Master's findings. He found the estate to be insolvent. However, for argument's sake, if per [Wife's] inventory the home had a marital component, she values it at $145,000. After real estate commissions and transfer taxes, the equity pre-debt is $132,000. The vehicles had equity of $9,000.00. There was minimal personal property. The debt outstanding at separation was about $132,000. Even if the home were marital property, the marital estate equity was about $12,000. There might have been a small pension but there is no evidence of specifics. In light of all the facts and equities, the Master's decision was very fair and equitable. There is very little equity, even assuming the house had a marital component, which it did not. In a 50-50 split, [Wife] would have received about $6,000. But, [Wife has been in prison for the great[er] part of her children's minority. She will be there for several more years since the children are still minors. [Husband] has undertaken and will continue to be the sole support of the children, including financially. The amount [Husband] is contributing to support the children alone is far greater than any possible marital equity. [Husband] is also contributing to [Wife's] daughter from another relationship. Moreover, [Husband] has undertaken to pay all of the marital loans including interests thereon. The land for the house . . . was indisputably a gift to [Husband from his parents]. In summary, even if [Wife's] exceptions that are relevant and material were to be construed in her favor, the equities in this case strongly support the Master's recommendations and findings.

The Master and this court tried to accommodate and be as fair to the parties as possible even though there are difficulties litigating a case with a long term SCI prisoner. There is nothing in the matters complained of, even if correct, that would negate the fact that this is essentially an insolvent estate and the [Husband] is assuming all the debts and assuming all financial support for raising and supporting the children.

[Wife's] complaints are specious and unreasonable in light of all the facts.

- 14 -

Trial Court Opinion, 9/4/19, at 1–3.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/07/2020